## 31752. GEORGIA ASSOCIATION OF THE AMERICAN INSTITUTE OF ARCHITECTS et al. v. GWINNETT COUNTY.

UNDERCOFLER, Presiding Justice.

We are called upon in this case to decide whether the design and supervision of the building of a fire station by a professional engineer employee of Gwinnett County constitutes the unlawful practice of architecture under Code Ann. Ch. 84-3. Code Ann. § 84-9903. The trial court held that there was no violation of this restriction and refused the injunction and mandamuses demanded by the Georgia Association of the American Institute of Architects, which appeals. We affirm. Since the building of a fire station falls within the legislative definitions of both professions and because the Code explicitly recognizes some overlap between them, we cannot say that the county's professional engineer has engaged in the unlawful practice of architecture.

The architects brought this suit against Gwinnett County and its professional engineer and his draftsman to enjoin the construction of a fire station designed by the engineer. At the time of the hearing for the injunction, the fire house was approximately twenty percent completed and forty to fifty thousand of the $189,200 contract price had been invested. They also sought to mandamus the sheriff to enforce the statutes, the county employees to perform their duties in a lawful manner, and the building inspector to require seals of architects on all plans before issuing building permits.

1. Code Ann. Ch. 84-3 defines architecture and establishes a board to qualify and license persons

desiring to practice professionally. "The practice of architecture...consists of rendering or offering to render service [consultation, planning, analyses, preliminary studies, designs, drawings and specifications, architectural administration of construction contracts]... in connection with the *design of any building*[1] or group of buildings or the design of alterations or additions thereto." Code Ann. § 84-301. (Emphasis supplied.) Professional engineering is defined in Code Ann. § 84-2103 (b) as "the practice of the art and sciences, known as engineering by which mechanical properties of matter are made useful to man in structures and machines, and shall include any professional service, such as consultation, investigation, evaluation, *planning, designing, or responsible supervision of construction or operation, in connection with any ... structures, buildings,* ... wherein the public welfare or the safeguarding of life, health or property is concerned or involved, when such professional service requires the application of engineering principles and data and training in the application of mathematical and physical sciences." (Emphasis supplied.) It thus appears that the design and supervision of the building of a fire station is permitted to both professions by the legislature.

The architects argue that the General Assembly has delineated the two professions in Code Ann. §§ 84-321[2]

---

[1] "A 'building' . . . is any structure consisting of foundation, floors, walls, columns, girders, beams and roof or a combination of any number of these parts . . ." Code Ann. § 84-301.

[2] This section, under the chapter on architects, provides in pertinent part: "Nor shall anything in this Chapter be held to prevent registered professional engineers or their employees or subordinates under their responsible supervising control from performing architectural services which are *purely incidental* to their engineering practice: Provided, however, that registered architects or their employees or subordinates under their responsible supervising control may perform engineering services which are *purely incidental* to their architectural practice." (Emphasis supplied.)

and 84-2125 (a),[3] by the word "incidental." These Code sections provide that only an architect may design a building, unless that building is "incidental" to an engineering project. *Flatauer Fixture &c. Corp. v. Garcia & Assoc.*, 99 Ga. App. 685 (109 SE2d 818) (1959). There the Court of Appeals held that a structure for the installation of ice cream machines was incidental to, and came within the definition of, professional engineering, and was not the unlawful practice of architecture. The architects maintain in contrast that the fire station is not incidental to an "engineering project" and does constitute unlawful practice. We, however, cannot so narrowly construe the broad language of the definitional statutes set out above.[4]

Furthermore, Code Ann. § 84-2124 makes it unlawful to construct any works or structures for public or commercial activities "which by the nature of their function or existence could adversely affect or jeopardize the health, safety or welfare of the public, unless the plans and specifications have been prepared under the direct supervision or review of, and bear the seal of, and the construction is executed under the direct supervision of or review by, *a registered professional engineer or architect.*"[5]

---

[3] This reciprocal section, applicable to professional engineers states, "Nothing in this Chapter shall be construed as excluding a qualified architect registered in Georgia from such engineering practice as may be *incident* to the practice of his profession, or as excluding a professional engineer from such architectural practice as may be *incident* to the practice of professional engineering." (Emphasis supplied.)

[4] The evidence was ample that this fire house was of simple design and construction. The professional engineer testified that it was similar to other projects he had designed both in Gwinnett County and formerly in New Jersey. He consults an architect when the structure is beyond his experience and expertise or when an interesting design is required.

[5] The section is explicitly applicable to counties but exempts structures under $100,000. The cost of the fire station will be $189,000.

We can only view this section as tacit recognition of the inherent overlap between these two professions.

Nor has the Court of Appeals read these statutes as narrowly as urged by the architects. In the only other Georgia case construing these statutes, it held that a professional engineer had not unlawfully practiced architecture when he designed prefabricated apartments. "It is a fact of industrial life that there are many occasions when the services performed by an architect and those by an engineer overlap." *Jones v. Spindel*, 128 Ga. App. 88, 97 (196 SE2d 22) (1973). On the other hand, we do agree with the architects that the engineers may not "freely" practice architecture. But we cannot say it has been done on these facts. A more precise line ought to be drawn between these professions, but that we must leave to the General Assembly. Under the language of the Code as it is now set out, such an overlap is recognized and tolerated by the legislature. We therefore conclude that Gwinnett County and its employees, the professional engineer and his draftsman, have not unlawfully practiced architecture.

2. The second contention by the architects that Gwinnett County does not have the constitutional power to design or draft plans and specifications or to erect a fire station is clearly without merit. The Georgia Constitution enables the counties to provide fire protection. Ga. Const., Art. XI, Sec. III, Par. I (Code Ann. § 2-7901a (1)). They are thus authorized to do whatever necessary to carry out this goal. The county is not in the architecture business, but it may use its own employees to provide the engineering services needed to accomplish its purposes, even if it does so through an authority.

The trial court properly refused to grant the architects the requested relief and for that reason will be affirmed. We need not reach the questions posed by the county on the constitutionality of Code Ann. § 84-321.

*Judgment affirmed. All the Justices concur.*

ARGUED JANUARY 10, 1977 — DECIDED
JANUARY 28, 1977.

*Huie, Ware, Sterne, Brown & Ide, Edgar H. Sims, Jr., Clinton D. Richardson, Cheeley & Chandler, Joseph E. Cheeley, Jr., Richard Chandler,* for appellants.

*Stark, Stark & Henderson, Homer M. Stark,* for appellees.

*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Chief Deputy Attorney General, Donald A. Langham, Deputy Attorney General, Michael J. Bowers, Senior Assistant Attorney General, John C. Jones,* amicus curiae.