35014. SMITH et al. v. BOARD OF COMMISSIONERS OF ROADS & REVENUES OF HALL COUNTY et al.

PER CURIAM.

This is a suit brought by certain Hall County taxpayers and certain employees of the Hall County Fire Department seeking injunctive relief against a contract entered into by the Hall County Board of Commissioners (hereinafter referred to as "Commissioners"). The plaintiffs ask the court to declare the contract invalid in its entirety and also challenge specific provisions of the contract. The contract in question essentially would

change the method of delivery of fire protection services in the Hall County Fire Protection District from the present Fire Department operated by the county to a system or plan under which Hall County would continue to provide fire stations and equipment but would employ a private corporation to procure, manage, supervise and direct the personnel in the fire protection delivery service.

Plaintiffs challenge the contract for various reasons as being beyond the Commissioners' authority, the principal reason proffered being that the Commissioners lack authority to cease funding and effectively dissolve the current Fire Department and lack authority to replace it with a private corporation. Plaintiffs further contend that the contract is in its entirety and in specific provisions an unauthorized delegation of authority and beyond the authority of the Commissioners. Plaintiffs also contend that the Commissioners lack authority to enter a contract which authorizes a private corporation to use public property notwithstanding that it would be in the process of delivering services to the public or to citizens of the Hall County Fire District, for the private corporation's own profit. The plaintiffs also contend that implementation of the contract would violate their constitutional rights and their rights under the Act establishing the Hall County Civil Service System. By amendment to their petition the plaintiffs also attack the contract on the ground that it is invalid and too vague.

The defendants on the other hand deny invalidity of the contract in any respect and contend that they were acting within their authority in entering into the contract and contend that they are not thereby abolishing the Hall County Fire Department but instead are attempting to provide better service and superior protection by contracting with a firm which allegedly has over 30 years experience in providing fire protection service to municipal and county governments and contend that by entering into the contract the Hall County Fire District will realize a cost savings of approximately $189,000.00 for the first year with controls over the increases in cost for subsequent years.

All too often, courts faced with aggrieved parties and a myriad of constitutional, statutory and case law, have

become so preoccupied with delicate legal analysis that they have appeared to be insensitive to the practical effect of decisions on human lives. Criticism, often justifiable, has pointed out this sometimes callous dispensation of justice as one of the foremost problems of today's judiciary.

With this criticism in mind, the court feels compelled to recognize the sincerity and depth of emotion present on both sides of this case. Among the plaintiffs are men and women, employees of Hall County, who have presumably given their best to serve the public. There must have been many occasions when some of these individuals were called upon to risk their very lives to protect the public. The pride these men and women feel in the service they have rendered is justified. Whatever their sacrifices, the deep concern and fear they feel over the prospect of losing their jobs is, to say the least, understandable. Understandable too is the concern shown by the taxpayers who joined in this suit. Given the obvious destructive capabilities of fire, worry and fear over the prospect of change from the current fire protection agency, a known quantity, to a new, relatively unknown agency, is only rational.

On the other side of the case are five County Commissioners, duly elected through the democratic process by the citizens of Hall County. We suspect that they too have deep feelings. As the legislative and executive branch of government in Hall County, this group is charged with the responsibility and trusted with the discretion to make many decisions and provide many services, among these, fire protection. These men have not been charged with graft, bribery, corruption, fraud, or conflict of interests; the charge appears to be that they exercised poor judgment and made a bad decision or a decision beyond their legal authority. If the Commissioners are surprised or stunned by the degree of public outcry prompted by their actions, it is understandable. Faced as they were with their obligation to provide fire protection services as economically as possible, and the opportunity to serve this goal while reducing the amount of government visited upon the public, it is easy to see how they might be perplexed by their present predicament as defendants in a lawsuit.

This court cannot help but be moved by the deep feelings and honest motivations on both sides of this case. However, we must hasten to add that in the American system of government, decisions of this and other courts cannot and must not be based on feelings but rather on the law. We need but glance at the devastation and toll in human lives and suffering taken throughout the world by those who would and do rule by feeling, whim, caprice, or personal desire to see the great value of the rule of law, the greatest and most enduring safeguard of liberty and justice.

### Findings of Fact

Most of the facts have been stipulated by the parties but for clarification the court makes the following findings of fact:

On December 14, 1970, pursuant to authority granted in Ga. L. 1960, p. 1303, as approved by a voters' referendum, the Hall County Board of Commissioners established the Hall County Fire Prevention District within which the Hall County Fire Department was created and funded. That department has remained in continuous operation from 1970 to the present.

On January 22, 1979, the Commissioners approved a resolution under which funding for the Hall County Fire Department was terminated as of March 1, 1979. On January 23, 1979, the Commissioners sent to the Hall County Civil Service Board notice of the Commission's intent to cease funding the Hall County Fire Department. On January 24, 1979, the Commissioners entered a contract with Metropolitan Fire Department (hereinafter called "Metro"), an Arizona corporation, requiring Metro to furnish fire fighting, first aid, emergency rescue and related services to the area known as the Hall County Fire District. All the formal requisites necessary to effect a contract with a county were met. On February 17, 1979, the Commissioners and Metro entered a second contract superseding the first, omitting two challenged clauses.

The employees of Hall County Fire Department, paid exclusively from fire district funds, are treated in matters of insurance, retirement benefits, leave policy, and civil service rights as employees of Hall County. The

Commissioners have not sent notice of intent to cease funding the Fire Department to the individual employees of said department. Metro, an Arizona corporation, is not a non-profit corporation and is in the fire protection business to make a profit. There is no evidence that the Commissioners' action in contracting with Metro is a sham or intended for any purpose other than to provide fire fighting, first aid, emergency rescue, and related services for the citizens in the Hall County Fire District, in the manner in the judgment of the Commissioners most advantageous to residents of the Fire District. There is no evidence that any county property, real or personal, is being deeded or conveyed to Metro.

*Questions for Decision*

1. Do the Hall County Commissioners have legal authority to enter into a contract with a private company to provide fire protection services?

2. Is the contract illegal because it requires the County to provide fire stations and fire fighting equipment for use by Metro Fire Department in the delivery of fire protection services?

3. Is the contract illegal because Metro Fire Department will or may make a profit from providing fire protection services?

4. Is the contract illegal because of its effect on employees' rights under the Hall County Civil Service System?

5. Is the contract invalid because of vagueness?

The first question we answer in the affirmative; the next four questions in the negative. We will discuss the above questions in the order just stated.

*1. Do the Hall County Commissioners have legal authority to enter into a contract with a private company to provide fire protection services?*

The Constitution of Georgia of 1976 provides in pertinent part that "(i)n addition to and supplementary of any powers now conferred upon and possessed by any county, municipality, or any combination thereof, any county, any municipality and any combination of any such political subdivisions may exercise the following powers and provide the following services: (1) . . . fire protection. . ." Code Ann. § 2-6102 (1976). This provision

clearly authorizes a county to decide to provide its citizens with fire protection services, and then to implement that decision. In implementing that decision, counties are "authorized to do whatever [is] necessary to carry out this goal." *Ga. Assn. of the American Institute of Architects v. Gwinnett County,* 238 Ga. 277, 280 (233 SE2d 142) (1977). In particular, *counties are authorized* to enter contracts to provide fire protection, even though that particular contractual power is not *expressly* conferred. As was aptly stated by Judge Powell over 70 years ago in *Wright v. Floyd County,* 1 Ga. App. 582 (58 SE 72) (1907), where "jurisdiction over a subject-matter is conferred upon county authorities. . . , the further power to contract in regard to that subject-matter is to be implied. . . " Id. Of particular importance to us, Judge Powell in describing the nature of this power to contract stated that "a part of this implicit power is the *authority to use discretion* as to the details of such contracts, subject only to the limitations imposed by the statutes or public policy of the State." Id. (Emphasis supplied.)

In light of these authorities, this court concludes that the Hall County Commissioners had authority to enter a contract with Metro designed to provide fire protection services for the Hall County Fire District. Having had the authority to provide services of this nature, they had the duty and discretion to examine the methods available to implement that goal and select that method which they determined most effectively and efficiently provided fire protection. We do not agree with counsel for plaintiffs that this case is controlled by the earlier Constitutional Amendment applicable, when passed, only to Hall County. Ga. L. 1960, pp. 1303—1306. This court cannot decide whether the Commissioners made the correct decision, but only whether it was a lawful one. The discretion to choose among lawful means is given by law to the Commissioners, not to the court. See *McCrory Co. v. Bd. of Commissioners,* 177 Ga. 242 (170 SE 18) (1933).

2. *Is the contract illegal because it requires the County to provide fire stations and fire fighting equipment for use by Metro Fire Department in the delivery of fire protection services?*

Plaintiffs rely upon two provisions to support their

contention that a contract which allows such a use of county property is illegal: first, Ga. L. 1935, 661, Sec. 13, which gives the Board of Commissioners "exclusive jurisdiction. . . (i) in governing and controlling county property. . . ," and second, Code Ann. § 91-602 which provides that "the ordinary or other authority shall have the control of all property belonging to the county, and may by order to be entered on his minutes direct the disposal of any real property which may lawfully be disposed of, and make and execute good and sufficient title thereof on behalf of the county." Plaintiffs draw from these laws the conclusion that "the duty to maintain exclusive control over County property is vested in the Hall County Commissioners. . ." This is a conclusion the court cannot accept. The Commissioners clearly do have the duty to maintain *control* over County property, but this duty co-exists with the duty to exercise that control in the manner they deem most beneficial to the County. See generally *Black v. County of Forsyth,* 193 Ga. 571 (19 SE2d 297) (1942); compare *Decatur v. DeKalb County,* 130 Ga. 483 (61 SE 23) (1908). The Commissioners had four basic options in this case with respect to the County properties acquired to provide fire protection: first, the properties could be held by the County, unused; second, they could all be sold; third, they could be leased out to one or more individuals or companies; or fourth, they could be used by the County as part of the consideration necessary to induce the private fire department to enter the contract. The first option would obviously cost the County considerable sums, both in lost revenues and in payments to retire the debts incurred for these properties. The second option would wed the County to the use of private fire protection for quite a while; the sale and subsequent purchase of other assets to provide fire protection after the contract was ended would be a considerable financial and administrative task, one which would be unnecessary if the County could keep its current properties until the contract proved itself either satisfactory or deficient. The third option would provide the benefit of revenues, but would invite and involve numerous other problems such as finding satisfactory (and interested) lessees, negotiating the leases, and avoiding the commitment of

County properties which could be needed on short notice should Metro default. The fourth option avoids virtually all of these problems and has the added benefit of reducing the cost of the contract by reducing Metro's cost of providing the service.

In light of the law and these policy considerations, it could not be said that the County Commissioners abused their discretion or violated their duty to control County property.

Plaintiffs also challenge the contract's allowing Metro to use County property arguing that that use violates the Constitution, Code Ann. §§ 2-1413 (1) and 2-6103. In pertinent part those sections provide as follows: "Except as provided in this Constitution, the General Assembly shall not by vote, resolution, or order, grant any donation or gratuity in favor of any person, corporation or association." Code Ann. § 2-1413 (1).

"The General Assembly shall not authorize any county, municipal corporation or political division of this State, through taxation, contribution or otherwise, to become a stockholder in any company, corporation or association, or to appropriate money for, or to loan its credit to any corporation, company, association, institution or individual except for purely charitable purposes. . ." Code Ann. § 2-6103.

The court cannot accept the contention that the contract violates either of these provisions. No "gratuity" is involved since the County is recovering substantial benefits in return for the use of County property. Compare *Grand Lodge v. Thomasville,* 226 Ga. 4 (172 SE2d 612) (1970); *Atlanta Chamber of Commerce v. McRae,* 174 Ga. 590 (163 SE 701) (1931). Nor is there, as plaintiffs' counsel contended in argument before the Court, any loaning of credit arising from the county's retirement of the bonded indebtedness on the property to be used by Metro. This situation involves no "credit" at all. Metro is not borrowing money from the County nor the County from Metro. Neither is the County assuming the position of surety for Metro. The County is simply paying the debt it incurred to purchase and construct the properties, and is allowing the use of those properties as partial consideration for Metro's promise to provide fire

protection. "Credit" is in no way involved in the transaction between Metro and the County, therefore plaintiffs' argument is without merit.

*3. Is the contract illegal because Metro Fire Department will or may make a profit from providing fire protection services?*

The fact that the private contractor is paid for its services and may make a profit under such a contract does not invalidate the contract provided the county or its residents receive the services required. If the existence of the prospect of profit, or of the profit motive were sufficient to invalidate a contract with the County, it is hard to imagine a contract which could remain. The profit motive is at the heart of the entire American economic system, and the opportunity to make profitable contracts to achieve lawful ends, one of the liberties protected by various constitutional provisions, both state and federal. See, e.g., United States Constitution, Art. I, Sec. 10.

The law permitting counties to enter contracts of this general nature would be emasculated if profit and the profit motive were sufficient grounds to invalidate them. The law as stated by the Georgia Supreme Court in this respect is sound and is based on the concept that the taxpayers and citizens of the several counties will benefit from such contracts between governmental units and private contractors and from the infusion of competitive business and private enterprise principles in the delivery of public services. Whether the contract now in question is one which will benefit the taxpayers and residents of the Hall County Fire District is a question properly for determination in the first instance by the County Commission and finally by actual experience. We are bound by the appellate decisions holding that unless there is an abuse of discretion superior courts should not substitute their judgment or interfere with governing authorities in the *proper* exercise of their judgment concerning such matters. See *McCrory v. Bd. of Commissioners,* 177 Ga. 242, supra.

*4. Is the contract illegal because of its effect on employees' rights under the Hall County Civil Service System?*

Plaintiffs argue that the Board of Commissioners

exceeded their lawful authority by terminating the present employees of the Hall County Fire Department without affording those employees the opportunity to be heard pursuant to applicable civil service regulations. In support of this position, plaintiffs contend that the regulations promulgated pursuant to the Hall County Civil Service Act, Ga. L. 1967, p. 2556, obligate the County to dismiss no employee except for cause and in accord with the Civil Service rules and regulations. Plaintiffs further contend that the failure to fund the firemen's positions is an unlawful attempt to deprive the firemen of rights guaranteed by the civil service laws. Absent allegations of improper conduct, the plaintiffs urge, the only method available to reduce the work force is through Civil Service procedures which require Civil Service Board approval of the reduction plan. See Civil Service Regulations 9.700.

Even though the plaintiff-firemen are covered by the Act, they are not afforded the broad protection they claim. The Civil Service Act was designed to assure a faithful employee continued employment and to protect those employees against terminations based on unjust or untrue charges that they were not doing or could not do their jobs properly. The Civil Service Act was not meant to, nor does it, deal with terminations based on budgetary concerns. The rule relied upon by plaintiffs may prevent a department head from laying off an employee due to a shortage of funds, but that rule is not applicable to the Commissioners. The attorney for the plaintiffs has cited no authority for his position that Civil Service applies to and proscribes the Commissioners' actions, nor do we find any such authority. If the authority to decide which jobs were necessary to the operation of the County's business was intended to be transferred from the Comissioners to the Civil Service Board, the Act creating civil service rights and authorizing the Civil Service Board would have so stated. It did not.

We recognize the interest of the employees. They are and should be protected from discrimination and discharge without cause from ongoing and continuing jobs; but when it is determined by the duly elected County Commissioners that the best interest of the public can be

served by the discontinuing of a department, the public's interest overrides whatever interest the individual employees have. Under the laws of this state there is no vested interest guaranteeing perpetuation of any particular county department. (In fact such perpetuation could run afoul of the constitutional prohibition of gifts or gratuities. See Code Ann. § 2-1413).

The question of property rights in retirement funds is not and cannot be determined by this decision. Since each individual's accumulation will be different they should not be determined by class action but rather administratively and individually as to each individual's rights. The administrative procedural rights of the individual employee in this regard, with right of appeal to the courts from administrative determinations are preserved to the individuals and are not affected by this order.

*5. Is the contract invalid because of vagueness?*

The essence of plaintiffs' arguments here is that the contract does not clearly define what, if anything, Metro is to do in order to fulfill its part of the contract. The defendants on the other hand, contend that the contract provides sufficient information from which the intent of the parties could be discerned and that accordingly the contract is valid.

The courts of this state have been reluctant to hold a contract void for vagueness as is illustrated in *Hanson v. Stern,* 102 Ga. App. 341 (116 SE2d 237) (1960), and *Leffler Co. v. Dickerson,* 1 Ga. App. 63 (57 SE 911) (1907).

"Williston's second secondary rule is that 'an interpretation which makes the contract or agreement lawful will be preferred over one which would make it unlawful'; and that 'an interpretation which renders the contract or agreement valid and its performance possible will be preferred to one which makes it void or its performance impossible or meaningless. . .' 3 Williston on Contracts (1936) § 620, p. 1785 et seq." *Hanson v. Stern,* supra at 343. " 'The law leans against the destruction of contracts on the ground of uncertainty, and a contract will not be declared void on that ground, unless, after reading it and interpreting it in the light of the circumstances under which it was made, and supplying or rejecting

words necessary to carry into effect the reasonable intention of the parties, their intention cannot be fairly collected and effectuated.' " *Leffler Co. v. Dickerson,* supra.

This contract is not void for vagueness. The intent of the parties seems fairly clear, in light of the circumstances and the nature of the contracting parties. The number of employees as well as their hours is defined; the area to be served is defined; the general nature of the services to be provided is described; insurance classification is set as an objective criteria under which the sufficiency of service can be measured. Judging the contract as a whole, this court cannot agree that it is too vague to bind Metro to any duties.

Finally, so seldom does any government, local, state or federal reduce its size, limit its scope or abolish any agency—so well established is the trend toward ever increasing government and the continual addition of new agencies, it is understandable that this step in the opposite direction should cause such consternation among those directly involved. Nevertheless, we of the Judicial Branch of government are constrained by the Constitution from infringing upon the other branches of government and their authority; to borrow from the sports world vernacular, we are not the coach or the quarterback calling the play; we are the referee or official merely determining whether there has been any infraction of the rules. The Commissioners of Hall County acted within their legal authority when they adopted the contract in question. The petition of the plaintiffs for injunctive relief must be denied.

The foregoing is the order and judgment written by Judge A. R. Kenyon and entered in this case. It is approved and adopted by this court.

*Judgment affirmed. All the Justices concur.*

ARGUED JUNE 13, 1979 — DECIDED SEPTEMBER 6, 1979.

*Sartain & Carey, Jack M. Carey, W. Allan Myers,* for appellants.

*J. Nathan Deal,* for appellees.