## 44635, 44636. HAGGARD et al. v. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA et al.
(360 SE2d 566)

WELTNER, Justice.

Four students at the University of Georgia filed a lengthy complaint against "the Board of Regents of the University System of Georgia, Dr. Henry King Stanford, Dr. Allen W. Barber, and the University of Georgia Athletic Association, Inc." The individual defendants were sued in their representative capacities, both as employees of the Board and as officers of the athletic association.

After a hearing on motions to dismiss filed by the Board and the

association, the trial court dismissed the Board, along with the individual employees of the Board, on the basis of sovereign immunity. The trial court treated the association's motion to dismiss for failure to state a claim upon which relief may be granted as a motion for summary judgment, and granted it, as well. The students assign error to the dismissal of the Board as a party, to the grant of summary judgment to the association, and to the court's rulings on several discovery motions.

1. The complaint contained four counts, the essential allegation of each being: (a) an athletic fee, required of each student, is collected by the Board and thus becomes state funds; (b) the Board transfers the fees in a lump sum to the association; (c) there is no contract for the delivery of goods or services by the association, which might serve as a consideration for the transfer of fees; and (d) the action of the Board in transferring the fees to the association violates Art. III, Sec. VI, Par. VI of the Constitution of Georgia of 1983. The constitutional provision relied upon prohibits the grant by the General Assembly of any "donation or gratuity" of state funds.[1]

2. The complaint, as re-defined at the hearing, is based upon two premises: that student athletic fees are state funds; and that transmission of them constitutes a "donation or gratuity."

(a) The students assert that the charging and collecting of the athletic fees by the Board equates them to "state funds." Neither the Board nor the association sought review on this issue.

(b) The Board and the association insist that the transfer of athletic fees is not a gratuity. A lease agreement between the Board and the association, renewed successively over several decades, provides: "So long as Lessor [the Board] continues its present athletic fee arrangement, Lessee [the association] shall continue to furnish to each

---

[1] Other contentions were withdrawn or abandoned at the time of the hearing. The students stated to the court: "The issue we are raising is a very narrow issue. . . . We recognize if the Board of Regents choose to run the program through the Athletic Association, again, that is within their discretion and contract with the Athletic Association. . . . *The problem focuses solely on the collection of the athletic fees and subsequent transmission to the Athletic Association.* . . . [T]he way it is done, is, the athletic fees are collected from the student body, when they register, and the check is written out to the Athletic Association for the amount of money, every quarter when they register, in the amount of $15.00. This check is handed over to the Athletic Association. . . . It is then co-mingled with their other sources of income. . . . [T]here is no way that the students' money can be tracked through the expenditure process of the Athletic Association. . . . . This clearly violates the antigratuity clause of the Constitution, Art. 3, Sect. 6, Par. 6. *The reason that it does this is because that the State is giving money to the Athletic Association, which no consideration, no express consideration, is flowing back to the University.* . . . I would be the first to admit, it would be possible to rule the case out I would think, *should the Athletic Association and the Board of Regents sit down and draw a contract that says in exchange for $950,000 of set fees, we, the Athletic Association will provide certain services, or mow the grass at Sanford Stadium, whatever, I think would throw me right out of court.*" (Emphasis supplied.)

student and to each faculty member admission to athletic events the same as is now being furnished either free or at reduced prices, and shall contribute to the support of the University Band."

3. It may not be entirely clear that monies collected from the students as athletic fees are the legal equivalent to appropriated funds as contemplated by the constitutional prohibition. That question may be pretermitted, however, as the lease agreement establishes beyond dispute that the Board receives substantial benefits from the arrangement with the association. Hence, there is ample consideration for the fees transfer, and it cannot be characterized as a gratuity. See *Smith v. Bd. of Commrs.*, 244 Ga. 133, 140 (259 SE2d 74) (1979).[2]

The lease agreement was before the court at the hearing, and by means of it, the sole remaining contention of the students (the "gratuity" claim) was overcome as a matter of law. The trial court did not err in granting summary judgment.

4. The students appeal directly from the judgment awarding attorney fees and expenses of litigation entered pursuant to OCGA § 9-15-14. The award was reduced to judgment several months after the judgment in the main case.

(a) The association asserts that the appeal must be dismissed for failure to file an application, as required by OCGA § 5-6-35 (a) (10). OCGA § 5-6-34 (c) provides that "[w]here an appeal is taken under any provision of subsection (a) or (b) of this Code section, all judgments . . . rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to . . . whether the judgment . . . was appealable by some other express provision of law . . . ." See *Southeast Ceramics, Inc. v. Klem*, 246 Ga. 294, 295 (1) (271 SE2d 199) (1980).

A review of an award of attorney fees and expenses of litigation ordinarily will not "affect the proceedings below" (i.e., the disposition on appeal of the main case). However, the opposite may be true. It would be anomalous if, through the discretionary appeal procedure, an award of attorney fees were either not reviewed, or were affirmed (bearing in mind the statutory time restraints) and the *underlying* claim were reversed on appeal some months later, when the entire record would be available to the court. We therefore conclude that a judgment awarding attorney fees and costs of litigation pursuant to OCGA § 9-15-14 may be reviewed on direct appeal, when it is appealed as part of a judgment that is directly appealable. Compare

---

[2] Because of the announced reliance by the students on this single issue, we do not address several other issues that may have been or might have been raised prior to the hearing, such as the standing of the students to bring this action, and concerns relating to the establishment of the association pursuant to OCGA § 20-3-78 et seq.

*Martin v. Outz*, 257 Ga. 211 (357 SE2d 91) (1987) (judgment of award of attorney fees for frivolous appeal must be appealed by application).

The court will accept jurisdiction of *this* appeal of an award of attorney fees because jurisdiction of the underlying claim is in this court.

(b) The trial court found evidence that the students and their attorney made inaccurate allegations, which easily could have been verified; made inaccurate representations of the status of the athletic association, which easily could have been verified; asserted meritless claims, which they abandoned on the day of the hearing; requested certification for class action, which they dropped without explanation at the hearing; engaged in unnecessary and abusive discovery based in part on the inaccuracies and meritless claims, and based in part on irrelevant lines of questioning. Additionally, the 38-paragraph complaint was winnowed down to a single assertion, which was overcome as a matter of law by the lease agreement, of which the students had knowledge. The association filed an affidavit showing the particulars of its expenses in preparing to defend the various allegations and in responding to discovery requests. The trial court found that the amount requested, $15,403.64, was reasonable for the services performed and thus made the award.

(c) The trial court awarded attorney fees and expenses of litigation on the basis of both OCGA § 9-15-14 (a) and (b). OCGA § 9-15-14 (a) provides for a mandatory award. The standard of review for this section is the "any evidence" rule.[3] OCGA § 9-15-14 (b) is discretionary and the standard of review is abuse of discretion. Under both standards the record supports the trial court's award.

We need not reach the remaining enumerations of error.

*Judgments affirmed. Gregory, Bell, Hunt, JJ., and Judges James E. Findley, Hugh Lawson and A. Blenn Taylor, concur. Marshall, C. J., Clarke, P. J., and Smith, J. not participating.*

DECIDED SEPTEMBER 9, 1987 —
RECONSIDERATION DENIED OCTOBER 22, 1987.

*Walden G. Housman, Jr.,* for appellants.
*Anthony L. Cochran, Michael J. Bowers, Attorney General, Al-*

---

[3] Compare standard of review of award of expenses of litigation pursuant to OCGA § 13-6-11, which requires a finding of bad faith. *Ken-Mar Constr. Co. v. Bowen,* 245 Ga. 676 (266 SE2d 796) (1980). (Award of attorney fees under OCGA § 13-6-11 is to be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense.)

*fred L. Evans, Jr., Senior Assistant Attorney General,* for appellees.