S95A1301. GARDEN CLUB OF GEORGIA, INC. et al.
v. SHACKELFORD et al.
(463 SE2d 470)

FLETCHER, Presiding Justice.

The Georgia Department of Transportation promulgated regulations to permit the trimming of trees and vegetation on the highway rights-of-way to make advertising signs on private property more visible. The Garden Club of Georgia sought to enjoin the department from issuing permits, contending that the regulations violate the constitutional prohibition against gratuities. The trial court denied the injunction. We reverse because the regulations assist the outdoor advertising industry without providing a substantial benefit to the state or its citizens.

In December 1994, DOT Commissioner Wayne Shackelford accepted the Outdoor Advertising Advisory Council's recommendations and ordered implementation of rules governing permits for vegetation control at outdoor advertising sites.[1] The rules permit the trimming of vegetation and removal of tree limbs that obstruct the view of outdoor advertising signs from the centerline of the highway travel lanes. The Garden Club and three of its members requested an administrative hearing and review. After the DOT rejected the request, the Garden Club filed its complaint in superior court seeking a temporary restraining order, declaratory judgment, and a preliminary and permanent injunction.

1. The Georgia Constitution prohibits the General Assembly from granting any donation or gratuity.[2] This Court has adopted the ordinary definition of "gratuity" as "[s]omething given freely or without recompense; a gift."[3] Thus, there is no gratuity when the state receives substantial benefits in exchange for the use of public property.[4] On the other hand, the state may not vacate public property for the sole benefit of a private individual.[5]

By implementing regulations allowing private companies to remove public property that blocks their signs, the state is giving an illegal gratuity. First, the state's tree-trimming regulations favor pri-

---

[1] Georgia Department of Transportation, Permit for Vegetation Control at Outdoor Advertising Site (rev. Sept. 9, 1994) (to be codified at Ga. Comp. R. & Regs., r. 672 (1994)).

[2] Ga. Const., Art. III, Sec. VI, Par. VI (1983) ("the General Assembly shall not have the power to grant any donation or gratuity").

[3] McCook v. Long, 193 Ga. 299, 303 (18 SE2d 488) (1942).

[4] Smith v. Bd. of Commrs., 244 Ga. 133, 140 (259 SE2d 74) (1979) (finding no gratuity when county received annual savings of $189,000 from private operation of fire-fighting services); Haggard v. Bd. of Regents, 257 Ga. 524, 525-526 (360 SE2d 566) (1987) (rejecting gratuity claim when college students and faculty attend athletic events free or at reduced prices in exchange for athletic fees that board collects and transfers to the athletic association).

[5] Marietta Chair Co. v. Henderson, 121 Ga. 399, 407 (49 SE 312) (1904).

vate individuals — either the owners of the outdoor advertising signs or the persons leasing the signs. The rules allow them to obtain permits to trim and remove trees, shrubs, and plants on the state rights-of-way to make billboards and other advertising signs clearly visible from vehicles on the state's highways. Second, the state fails to receive a substantial benefit for use of this property. The information that the traveling public derives from the outdoor advertising signs located on private property is insufficient to qualify as a substantial benefit. Travelers can gain the same information about available goods and services from other sources without the loss of the state's natural resources.[6] Because an unobstructed view of outdoor advertising signs on private property supports the sign owners without providing a substantial benefit to the state or its citizens, we hold that DOT's regulations violate the Georgia Constitution's prohibition against the granting of gratuities.

2. In reaching this conclusion, we reject the argument that the General Assembly has determined as a matter of public policy that outdoor advertising provides substantial benefits to the traveling public. In 1967, the Georgia General Assembly enacted the Control of Advertising Act to regulate outdoor advertising along interstate and primary state highways.[7] The legislature acted to protect the traveling public from distractions, aesthetic desecration, and nuisances "associated with the proliferation of signs in a concentrated area along the highway."[8] The statutory provisions cited by the Outdoor Advertising Association do not constitute a contrary statement of public policy; they merely provide that certain outdoor advertising signs will not be disallowed.[9] Thus, the general statutory scheme favors both highway safety and the natural beauty of trees over an unobstructed view of private billboard advertising.

*Judgment reversed. All the Justices concur, except Benham, C. J., and Carley J., who dissent; Hines, J., not participating.*

BENHAM, Chief Justice, dissenting.

Because I am persuaded that the vegetation control program at issue here serves valid state interests and does not constitute an un-

---

[6] See OCGA §§ 32-6-72 (6) & 32-6-73 (4) (1991) (allowing signs "about goods and services in the specific interest of the traveling public" in defined areas approved by the U.S. Secretary of Transportation); see also 23 USCA § 131 (f) (West 1990) (requiring the transportation secretary to promulgate national standards for signs within the rights-of-way near interchanges on the interstate highway system).

[7] OCGA § 32-6-70 (codifying Ga. L. 1967, p. 423, § 1); see also 23 USCA § 131 (a) (stating congressional intent to control outdoor advertising to protect the public investment, "promote the safety and recreational value of public travel, and to preserve natural beauty").

[8] *Turner Communications Corp. v. Ga. Dept. of Transp.*, 139 Ga. App. 436, 438 (228 SE2d 399) (1976).

[9] See OCGA §§ 32-6-72 (4), (5) & 32-6-73 (4).

constitutional grant of a gratuity, I must dissent to the majority's invalidation of the regulation governing the program. While recognizing that state action which benefits private parties is not an unconstitutional gratuity so long as there is a substantial benefit to be derived by the State or its citizens (*Smith v. Bd. of Commrs.*, 244 Ga. 133, 141 (259 SE2d 74) (1979)), Garden Club and the majority take the position that the only benefit to be derived from the tree-trimming program is the benefit the advertisers get from having their signs made visible. That position ignores the public policy of this state, as expressed by the legislature in the laws regulating outdoor advertising along the state's highways, supporting the presence of advertising of "goods and services in the specific interest of the traveling public. . . ." See OCGA §§ 32-6-72 (4-6) and 32-6-73 (4). The phrase, "in the specific interest of the traveling public," is defined in OCGA § 32-6-71 (23) as "information regarding places offering lodging, food, motor vehicle fuels and lubricants, motor vehicle service and repair facilities, or any other service or product available to the general public." The breadth of the concluding phrase in that provision, "any other service or product available to the general public," indicates a legislative determination that all advertising aimed at the general public is in the interest of the traveling public. I conclude from that statement of public policy that the presence of signs advertising services and products constitutes a benefit to the traveling public on this state's highways and that action which renders such advertising visible is likewise of benefit to the traveling public. Because I cannot countenance as the public policy of this state the destruction of a major part of a legitimate industry, I must dissent.

I am authorized to state that Justice Carley joins in this dissent.

DECIDED NOVEMBER 6, 1995 —
RECONSIDERATION DENIED DECEMBER 4, 1995.

*Douglas P. Haines, Eric E. Huber*, for appellants.

*Michael J. Bowers, Attorney General, Carol A. Callaway, George P. Shingler, Assistant Attorneys General*, for appellees.

*S. Wesley Woolf, Schreeder, Wheeler & Flint, David H. Flint, Mark W. Forsling*, amici curiae.