A99A1004. CITY OF LITHIA SPRINGS v. TURLEY et al.
(526 SE2d 364)

PHIPPS, Judge.

In 1997, James and Thelma Turley brought this action against the City of Lithia Springs seeking a declaratory judgment dissolving the City because it was inactive. The trial court granted the Turleys' motion for summary judgment and dissolved the City because it failed to provide, either directly or through contract, at least three of the municipal services required by OCGA § 36-30-7.1 (b) (1) for it to qualify as an active municipality. The City appeals the order granting summary judgment.

The trial court found that the City provided road and street construction or maintenance services. Because we find that the City also provided water supply services and that it established triable issues of fact with regard to the sufficiency of the consideration under its fire protection contract with Douglas County and to the adoption of its building and zoning codes, we reverse the summary judgment and vacate the order dissolving the City.

The City of Lithia Springs was originally chartered as Salt Springs in 1882. The name Salt Springs was changed to Lithia Springs in 1918; the town became inactive in 1933; and for the next 60 years, no one served as mayor or council and no council meetings were held; a suit for reactivation of the City was filed in 1993; and the City held elections in 1994. A mayor and five council members were elected and sworn into office in 1994. The General Assembly reincorporated the City by its act of April 8, 1996.[1] The act provided a new charter for the City under which it has perpetual duration.

Following its reactivation, the City entered into a series of intergovernmental contracts. These included a contract with the Douglas County Sheriff for law enforcement services (the "Law Enforcement

---

[1] Ga. L. 1996, p. 4319.

Contract") and contracts with Douglas County for the provision of fire protection and emergency medical services (the "Fire Protection Contract"), the enforcement of various building, plumbing and safety codes (the "Code Enforcement Contract") and certain planning and zoning services (the "Zoning Services Contract"). The City also contracted for continuing operation within its corporate limits of water and sewer facilities with the Douglasville-Douglas County Water & Sewer Authority (the "Authority") through its Agreement for Transfer of Water and Sewer Assets (the "Water and Sewer Contract").

The Turleys filed this declaratory judgment action against the City on February 26, 1997, and subsequently moved for summary judgment. The City filed a cross-motion for summary judgment. The question before the trial court was whether the City was an active municipality. To be an active municipality, it must provide, either directly or by contract, at least three of the services listed in subsection (b) (1) of OCGA § 36-30-7.1. It is undisputed that the City complied with subsections (b) (2) and (3) with respect to certain meetings and the election of officials. The City contended that it provided the following services enumerated in OCGA § 36-30-7.1: (i) law enforcement, (ii) fire protection, (iii) water supply or distribution, (iv) enforcement of building, housing, plumbing, electrical and other similar codes, (v) planning and zoning, (vi) recreational facilities and (vii) road or street construction or maintenance. The trial court found that the City provided road and street construction or maintenance, but no other services. Because the trial court found that the City failed to provide at least three of the services enumerated in subsection (b) (1), it granted summary judgment to the Turleys, found the City to be inactive and, as directed by OCGA § 36-30-7.1 (j), ordered the City to be dissolved.

In ruling on a motion for summary judgment, the court should give the opposing party the benefit of all reasonable doubt and should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion.[2] On appeal of the grant of summary judgment, we must determine whether the trial court erred in concluding that no genuine issue of material fact exists and that the Turleys are entitled to summary judgment as a matter of law.[3] Our review is de novo.[4]

1. The City argues that the Turleys have no standing to bring this declaratory judgment action. Although this Court considered, in *Sherrer v. City of Pulaski*,[5] the question of whether a city met the

---

[2] *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988).
[3] *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993).
[4] *Walker v. Virtual Packaging*, 229 Ga. App. 124 (493 SE2d 551) (1997).
[5] 228 Ga. App. 78 (491 SE2d 129) (1997).

minimum standards for maintaining a charter under OCGA § 36-30-7.1, we have never ruled on the question of standing to bring an action for declaratory judgment under this Code section. The City claims that subsection (j)[6] applies only to those municipalities which the Georgia Department of Community Affairs (the "DCA") omitted from the list of inactive and active municipalities compiled pursuant to this Code section.[7] Under subsection (f), the DCA was required to publish a list of cities whose legal existence would be terminated on July 1, 1995, and those whose legal existence would not be terminated. The record shows that the DCA included the City in its list of active municipalities. However, this Code section allows any citizen of the municipality or county in which the municipality is situated to bring a declaratory judgment action to dissolve a municipality in "any case in which the legal dissolution of a municipal corporation has not been certified."[8] Subsection (j) does not contain the limitations urged by the City.

The Georgia Municipal Association (the "GMA"), in an amicus brief, notes that OCGA § 36-30-7.1 provides that the list of active and inactive municipalities compiled by the DCA "is conclusive evidence, acceptable in any court and recordable in any public records, of the termination or continuation of existence of a municipal corporation."[9] The GMA maintains that subsection (f) operates to prevent future questioning in any court of a city's continued existence, so long as the city appeared on the DCA's list of cities which were "not terminated." However, the list compiled by the DCA only establishes the status of municipalities on July 1, 1995. On and after July 1, 1995, the charter of any municipal corporation in the state is subject to repeal by operation of law upon failure to maintain the minimum standards established by OCGA § 36-30-7.1.[10] The plain language of the Code section gives the Turleys standing to bring this declaratory judgment action.

2. The trial court found the Fire Protection Contract void in violation of the Georgia Constitution's prohibition against gratuities.

---

[6] "In any case in which the legal dissolution of a municipal corporation has not been certified under the provisions of subsection (f) of this Code section but the municipal corporation does not in fact meet the minimum standards for determining an active municipality enumerated in subsection (b) of this Code section, any citizen of the municipal corporation or the county in which the legal situs of the municipal corporation is located may bring at any time on or after July 1, 1995, a declaratory judgment action for a declaration of the dissolution of the municipal corporation."

[7] OCGA § 36-30-7.1 (f).

[8] OCGA § 36-30-7.1 (j).

[9] OCGA § 36-30-7.1 (f).

[10] "On *and after* July 1, 1995, any municipal corporation in this state shall be deemed an inactive municipality and its charter shall be repealed by operation of law if the municipal corporation fails to meet any of the minimum standards provided in subsection (b) of this Code section for determining an active municipality." (Emphasis supplied.) OCGA § 36-30-7.1 (a).

Art. III, Sec. VI, Par. VI (a) of the Georgia Constitution provides, in part, "The General Assembly shall not have the power to grant any donation or gratuity." The provision is also applicable to cities and counties.[11] When examining whether a contract provided an improper gratuity by a county, the courts have asked if the county received substantial benefits.[12]

The Fire Protection Contract provides for a number of services, including fire protection services, detection and prevention of arson, enforcement of fire regulations, fire prevention education and emergency medical services, to be provided to the City by Douglas County. In return, the City is required to remit to Douglas County an amount equal to the cost of emergency medical services provided for the City at the rate Douglas County charges for those services in unincorporated areas. An initial cost schedule for the emergency services is attached to the contract. The trial court found that the City's payment obligation provided consideration only for the emergency medical services provided by Douglas County, that the fire services were provided by Douglas County for no consideration, and thus the contract was in violation of the prohibition against gratuities. However, the Fire Protection Contract, under its terms, assigns the monetary consideration to be provided by the City to all of the services to be provided by Douglas County. The City's consideration under the contract need only provide substantial benefits to Douglas County in order to avoid an improper gratuity with respect to the fire protection services. The City's reliance on the consideration provided by the transfer of fire equipment to the Douglas County Fire Department is misplaced because the equipment came from the "People of Lithia Springs" and not from the City.

Genuine issues of material fact exist about whether Douglas County is receiving substantial benefits under the Fire Protection Contract, and further evidence is needed to establish whether it is receiving more than a nominal amount of money.

3. The trial court found the Law Enforcement Contract void in violation of the prohibition against gratuities and in violation of OCGA § 15-16-13, which regulates the manner in which municipalities may contract with county sheriffs for the provision of law enforcement services. The statute requires municipalities to reimburse a county on a cost basis for services provided by the county sheriff. The Law Enforcement Contract requires that the City pay only a nominal fee for the law enforcement services provided by the Douglas County Sheriff and, thus, is in violation of the statute. The

---

[11] *Grand Lodge &c. v. City of Thomasville*, 226 Ga. 4, 7 (3) (b) (172 SE2d 612) (1970).

[12] See *Smith v. Bd. of Commrs. &c. of Hall County*, 244 Ga. 133, 140 (2) (259 SE2d 74) (1979).

City does not present any arguments to the contrary. The trial court correctly found that the City did not provide law enforcement services on its own or through a lawful contract. We need not consider whether the Law Enforcement Contract was void in violation of the prohibition against gratuities.

4. The City claims that the trial court could not adjudicate the contractual rights of Douglas County, a nonparty. But the City chose not to move to dismiss the action for failure to join Douglas County as an indispensable party[13] and has waived any right to complain now that Douglas County is a nonparty to the suit.

In a separate assertion of error, the City challenges the standing of the Turleys to attack the validity of the intergovernmental contracts. The action here was for declaratory judgment and not an action on a contract under OCGA § 9-2-20, as the City implies. The intergovernmental contracts were reviewed by the trial court only within the context of whether the City had, through the contracts, provided the services enumerated in subsection (b) (1) of the Code section.

5. The City claims that the prohibition against gratuities is not available to void an intergovernmental contract specifically authorized under the Georgia Constitution.[14] We find it is unnecessary to rule on this constitutional question here, because we have reversed the grant of summary judgment on other grounds.[15]

6. The trial court found that the City failed to provide service for the "[e]nforcement of building, housing, plumbing and electrical and other similar codes. . . ."[16] Its ruling is based on two grounds. First, the trial court found the City failed to present proof that it had adopted a building code. Second, the trial court held that the City had presented no evidence that it enforced its building code.

The City's adoption of a building code is in dispute. From the record it is not clear whether the code entitled "Chapter 6, Buildings; Construction and Related Activities" was adopted by the City at its October 20, 1994 meeting. We find, however, that the City presented sufficient evidence to create an issue of triable fact on whether it had adopted a building code.

The Code Enforcement Contract indicates that the City intended that Douglas County enforce the City's building code, but that Douglas County was obligated to enforce the code only when the City either established a municipal court or contracted with Douglas County's chief magistrate for municipal court services. The trial

---

[13] OCGA § 9-11-12 (h) (2).

[14] Art. IX, Sec. III, Par. I.

[15] See *Wright v. Robinson*, 262 Ga. 844, 846 (2) (426 SE2d 870) (1993); *Grayer v. Hagler*, 181 Ga. App. 662 (353 SE2d 545) (1987).

[16] OCGA § 36-30-7.1 (b) (1) (I).

court acknowledged that the City established a municipal court in 1998, the calendar year after this action was filed. The trial court looked only to the date that the declaratory judgment action was filed to determine whether the City provided enforcement services.[17] In this case, however, the declaratory judgment should speak to the status of the City as of the date of the judgment because that is the date the City was declared inactive and its charter dissolved. It was incumbent on the trial court to consider all of the evidence in the record before it, including those events occurring after the date that the Turleys filed the action. Given that the City did establish a municipal court, the Code Enforcement Contract would be sufficient to provide enforcement services, so long as the City can establish that it has adopted a building code.

7. The trial court found that the City did not provide water supply services. Under the Water and Sewer Contract, the Authority agreed to continue to operate the water and sewerage system facilities within the City. In return, the City agreed to divest and transfer to the Authority any legal interest it may have had in the water and sewer facilities within the corporate limits of the City. The trial court found that there was no consideration for the Water and Sewer Contract inasmuch as the City owned no water or sewer facilities that it could transfer, and that the Water and Sewer Contract did not provide a service to the City.[18] The court also referred to an affidavit of the Authority's director as evidence that the Authority had no service contract with the City.

The Water and Sewer Contract obligated the Authority to continue to operate the water and sewer facilities in the City in the same manner as they were currently operated. This is an obligation of the Authority under the terms of the contract to provide water and sewer services, and the affidavit of the Authority's director cannot act to alter its meaning.[19] The trial court's finding that the City did not have any interest in water and sewer facilities within its borders at the time the Water and Sewer Contract was entered into is not dispositive. The Authority could not have been certain of the City's legal interest in the facilities. Forbearance to prosecute a legal claim and compromise of a doubtful right constitute consideration sufficient to support a contract.[20] Furthermore, the Water and Sewer Contract is

---

[17] Here, the declaratory judgment action to dissolve the City was filed less than a year following its reincorporation by the General Assembly.

[18] The consideration provided by the City to the Authority was not examined by the trial court in the context of the prohibition against gratuities, because the Authority was a public corporation to which the prohibition against gratuities has not been extended.

[19] See *McCann v. Glynn Lumber Co.*, 199 Ga. 669, 674 (1) (34 SE2d 839) (1945) (parol evidence may not alter unambiguous terms of written contract).

[20] *Wolfe v. Breman*, 69 Ga. App. 813, 817 (1) (26 SE2d 633) (1943).

"for and in consideration of the sum of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged," and the contract is sealed. "[N]ominal consideration recited in sealed instruments is sufficient as a matter of law. [Cits.]"[21] We find the City provided water supply services through the Water and Sewer Contract for purposes of subsection (b) (1) of OCGA § 36-30-7.1.

8. The trial court found that the City had not provided recreational facilities. The City had agreed to provide $1,000 in matching funds for a $5,000 grant application with the Atlanta Regional Commission for the implementation of bicycle and pedestrian path projects within the City. The City argues that to "provide," for purposes of OCGA § 36-30-7.1, would include "to make advance preparations for." In this case, the record shows only that the City had a bicycle and pedestrian path plan, and that it was seeking money to implement it. But the Code section speaks of the provision of "recreational facilities," and the evidence does not show that the City provided any recreational facilities.

9. The trial court acknowledged that the City adopted a comprehensive zoning plan at its March 14, 1996 meeting. The City contracted with Douglas County to provide enforcement of its zoning ordinances. As in the case of the Code Enforcement Contract, Douglas County was not obligated to enforce the City's zoning ordinance until the City established a municipal court or had entered into a valid contract with the Douglas County magistrate for the provision of municipal court services. However, the Zoning Services Contract expired by its terms on December 31, 1995.

The trial court held that "Without enforcement, there is no zoning." OCGA § 36-30-7.1 (b) (1) (J) requires only that a municipality provide "planning and zoning." The trial court misconstrued the statute by requiring that enforcement of zoning be shown to establish "planning and zoning" services. OCGA § 36-30-7.1 specifically requires enforcement of the building code as an enumerated service, but not enforcement of planning and zoning.[22] However, inasmuch as the City established its municipal court in 1998, and the record shows that the City Council regularly considers zoning matters, the tools of zoning enforcement are in place.

The trial court implied in its order that the City had not adopted a valid zoning ordinance. But there appears to have been a city council meeting in October 1994 for the purpose of adopting a city code, including a zoning ordinance. The record shows that at a city council meeting on September 24, 1998, a "request for zoning on case 98-04"

---

[21] *Jolles v. Wittenberg*, 148 Ga. App. 805, 807 (2) (253 SE2d 203) (1975).
[22] OCGA § 36-30-7.1 (b) (1) (I).

was scheduled. On October 8, 1998, there was a council "vote on a zoning variance for the New Fellowship Church parking lot." The City has established a triable issue of fact regarding the adoption of a zoning ordinance. The trial court erred in finding, for purposes of summary judgment, that the City did not provide "planning and zoning."

The trial court found that the City provided road or street construction or maintenance services. We find that the City also provided water supply services. There are material issues of fact with regard to whether the City provided fire protection services, enforcement of its building code or planning and zoning services. Therefore, the Turleys were not entitled to summary judgment on the question of whether the City was inactive under OCGA § 36-30-7.1. The order of the trial court dissolving the City of Lithia Springs is hereby vacated, and the court's finding of summary judgment in favor of the Turleys is reversed.

*Judgment reversed. McMurray, P. J., and Andrews, P. J., concur.*

DECIDED NOVEMBER 30, 1999 —
RECONSIDERATION DENIED DECEMBER 15, 1999 — 

*David M. Williams*, for appellant.
*Scott K. Camp*, for appellees.