A98A1827, A98A1942. CAGLE et al. v. DAVIS et al. (two cases).

(513 SE2d 16)

SMITH, Judge.

These related appeals arose from a claim of legal malpractice brought by appellant Carolyn Cagle, an attorney, against Baxter Davis, her former counsel in a divorce action. We find the trial court properly granted summary judgment to Davis and his law firm on Cagle's legal malpractice claim, and we therefore affirm the judgment in Case No. A98A1827. We also affirm the trial court's judgment in Case No. A98A1942 denying Cagle's motion for contempt. And in the latter case, we impose upon Cagle and her counsel, J. Calhoun Barrs a/k/a Jack C. Barrs, penalties pursuant to Court of Appeals Rule 15 (b), because that motion and Cagle's appeal are entirely frivolous.

## Case No. A98A1827

The first appeal, A98A1827, is from a summary judgment granted in favor of appellees Baxter Davis and his law firm ("Davis") on Cagle's claim of legal malpractice. Davis briefly represented Cagle in defending a divorce action brought by her husband. During the litigation, the husband's attorney, Robert Boyd, learned from his client that Cagle held a number of joint certificates of deposit. Believing that she might have liquidated one or more of them, Boyd asked Davis for an accounting, and Davis questioned his client about the CDs. At Cagle's deposition, she produced a cashier's check drawn on SunTrust Bank, marked "TO REDEEM CD" and made out jointly to Cagle and her husband.[1] With both parties present, Boyd agreed with Davis that Davis's law firm would hold the CD proceeds in escrow pending resolution of the divorce.

After approximately three months, disagreements arose regarding the conduct of the litigation, and Davis requested that Cagle find other counsel. Cagle's new counsel, Barrs, requested that the CD proceeds be turned over to him. Davis asked Boyd if he objected to this, and Boyd responded that he did object. Davis then filed a motion seeking the trial court's direction as to handling of the CD proceeds. At the hearing on this motion, Barrs stated that he no longer wanted to hold the proceeds, and the trial court entrusted them to Boyd.

Thereafter, and while the divorce action remained pending, Cagle filed this civil action alleging legal malpractice in the disclosure of privileged information. In support of her claim, she filed an

---

[1] A standing order issued in Fulton County, where the divorce action was filed, forbids the litigants in any domestic matter "[f]rom selling . . . or otherwise disposing or removing from the jurisdiction of the Court, any of the property belonging to the parties."

affidavit pursuant to OCGA § 9-11-9.1. The attorney giving the affidavit stated "I have been asked to assume the following facts to be true," including that "Mr. Davis or a member of his firm provided information directly to the counsel for the plaintiff . . . concerning the defendant's case." The affidavit did not specify the information Davis was supposed to have provided.

Davis filed a motion for summary judgment, attaching numerous exhibits and affidavits. Cagle's response did not include any affidavits, but she asserted for the first time — citing no authority other than the general confidentiality statute, OCGA § 15-19-4 (3) — that Davis's disclosure to Boyd of the fact that Cagle's new counsel had requested delivery of the CD proceeds constituted divulging confidential information.

1. Cagle contends the trial court erred in granting Davis's motion for summary judgment, asserting that disputed issues of material fact exist. In her appellate brief, she continues to insist that the proceeds of the CD were "her property," but this contention is belied on the face of the document itself by the designation of joint payees, as Cagle, herself an attorney, should know. OCGA § 11-3-116 (b). The CDs were identified as assets in the divorce action by Cagle, as required by Uniform Superior Court Rule 24.2. Moreover, as the trial court correctly observed, Davis was not authorized unilaterally to terminate a fiduciary agreement with Cagle's husband and his counsel without seeking their permission or the guidance of the court, which would require notice to the other parties to the agreement. Cagle was fully aware of the fiduciary agreement; the undisputed facts leave no doubt that she was present when it was created and consented to it. Cagle also has failed to show any damages resulting from the disclosure.

In her brief in response to Davis's summary judgment motion, Cagle for the first time asserted a number of additional claims of professional malpractice sounding in negligence. Those claims were not addressed in her OCGA § 9-11-9.1 affidavit or in her complaint, and it does not appear from the record that the complaint was ever amended to state any claims for negligence. Cagle has shown no injury from the alleged negligence, and "where as in this case the viable underlying action remains pending, plaintiff can prove no such injury because the action may terminate favorably for the client." (Citation and punctuation omitted.) *Mauldin v. Weinstock*, 201 Ga. App. 514, 518 (411 SE2d 370) (1991).

In addition, the belated claims are wholly without merit. Cagle first claims that Davis failed to enter an appearance or file an answer on her behalf. But an answer is not essential in a domestic relations case because a default judgment may not be entered. OCGA § 19-5-8; *Benefield v. Benefield*, 224 Ga. 208 (2) (160 SE2d 895) (1968). And

Cagle has shown no resulting prejudice. Cagle also claims that Davis failed to respond to discovery requests, but unopposed affidavits from both Davis and the husband's counsel show that, in the short period of time Davis represented Cagle, counsel agreed to an informal exchange of documents with a view to a quick settlement and that Cagle consented to this arrangement. Moreover, Cagle's deposition was taken by agreement, and the financial records provided in discovery, including the CDs, were discussed at some length. The discovery period had not expired at the time Davis's representation of Cagle ended, less than six months after the complaint was filed. Uniform Superior Court Rule 5. While Cagle initially alleged that Davis's failure to respond had resulted in a motion to compel, Barrs eventually acknowledged under questioning by the trial court that *he*, not Davis, had failed to respond, resulting in the motion. Finally, while Cagle stated in her brief that Davis's bills were excessive, she agreed in her retainer contract to dispute any bills in writing within 30 days. As the trial court observed, "Particularly as an attorney licensed to practice under the laws of Georgia she knows, I would hope, what a contract is and what the obligations are under the contract."

2. Cagle also appeals the imposition of sanctions under OCGA § 9-15-14 in the amount of $26,533.50 for attorney fees and $1,586.32 for expenses of litigation, for a total of $28,119.82. Subsection (b) allows the trial court sua sponte to assess attorney fees and expenses of litigation when a party has brought an action that "lacked substantial justification" or "was interposed for delay or harassment." The standard of review under OCGA § 9-15-14 (b) is abuse of discretion. *Bass v. Pearson*, 219 Ga. App. 487, 488 (466 SE2d 17) (1995).

In its ruling from the bench, the trial court succinctly outlined the serious deficiencies in Cagle's case. Her counsel acknowledged in response to the court's questioning that he failed to contest any of the affidavits placed on the record by Davis or opposing counsel Boyd, although he continued to insist that material issues of fact remained. But Cagle never presented any evidence in response to the motion. "In response to a properly supported motion for summary judgment which pierces the pleadings, plaintiffs may not stand upon their allegations, but must come forward with evidence to contravene defendants' proof or suffer judgment. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)." *Bowden v. Pryor*, 215 Ga. App. 351-352 (450 SE2d 845) (1994). As discussed above, Cagle did not make any specific allegations of malpractice until she responded to Davis's motion, and even then she never demonstrated any legal basis for her claim that a communication regarding a check held in an escrow agreement, which was known and consented to by all parties, constituted a breach of confidentiality.

The trial court also found that the action "was brought for, I would assume, purposes of harassment, perhaps as [trial counsel] says because a phone call wasn't returned." While Cagle asserts in passing that the amount assessed against her is unreasonable, she cites no legal authority and does not indicate the specific items or amounts she contends are improper. Her assertion that the amount is excessive because her complaint should have been dismissed earlier for insufficiency of the expert affidavit is not only disingenuous but incorrect. See *Bala v. Powers Ferry Psychological Assoc.*, 225 Ga. App. 843, 845 (491 SE2d 380) (1997) (assertion that defendant disclosed unspecified confidential information meets requirements of OCGA § 9-11-9.1). We cannot say that the trial court abused its discretion in finding that Cagle's suit lacked substantial justification.

*Case No. A98A1942*

3. Cagle's second appeal, A98A1942, is from the trial court's later order denying Cagle's motion to hold Davis and his firm in contempt and again assessing attorney fees, in this case pursuant to Davis's motion under OCGA § 9-15-14 (a) in the amount of $1,240. Judgments for attorney fees are ordinarily reviewable only on application for discretionary appeal, OCGA § 5-6-35 (a) (10), but appellees' motion to dismiss is without merit in this instance because the Supreme Court of Georgia has held that an award of attorney fees need not be appealed through the discretionary application process when a direct appeal from the underlying judgment is pending. *Mitcham v. Blalock*, 268 Ga. 644, 647 (4) (491 SE2d 782) (1997). Accordingly, Davis's motion to dismiss the appeal is denied.

4. The contempt motion filed by Cagle arose from the drafting and circulation of the summary judgment order in Case No. A98A1827. After a hearing on attorney fees and expenses, the trial court's law clerk notified counsel for Davis that the full amount requested by Davis would be awarded. Counsel was instructed to draft a proposed order and forward it to Barrs for approval as to form and did so by letter of January 23, 1998. Barrs responded on January 27 with a letter accusing the trial court of ignoring his arguments, declining to consent to the proposed order "as to form or otherwise," and reserving his objections until appeal. Davis's counsel then sent the proposed order to the trial court as directed. Despite the refusal to participate in the drafting process, as stated in his letter of January 27, Barrs wrote the court on January 30 claiming that the order was not sent to him as instructed and demanding an in camera hearing "due to the serious nature of this incident." Davis's counsel then called Barrs attempting to find out what the problem was with the order, and Barrs refused to tell her. At the hearing on the motion for

contempt, Barrs *admitted* to the trial court that he refused to tell Davis's counsel what the problem was, explaining that he did not want to do her work for her. As the trial court correctly observed, the "problem" was that "the word processor had a glitch and added some inadvertent words . . . [that] didn't make any sense." But this error did not "add or subtract from anything" and "was obviously a mistake."

After finding the problem herself, Davis's counsel corrected the proposed order and forwarded copies to Barrs and to the trial court, pointing out the correction she had made. The original order containing the error had never been signed, because the trial court had also noticed the error. The trial court signed and entered the corrected order and notified Barrs. Barrs, unmollified, telephoned the law clerk and demanded a hearing, which was refused by the trial court.

Barrs then filed a motion for contempt. Davis's counsel responded with a motion for attorney fees and expenses of litigation under OCGA § 9-15-14 (a). After a hearing, the trial court denied Barrs's motion and granted Davis's, awarding additional attorney fees and expenses.

Cagle does not appeal the denial of her motion for contempt, nor does she appeal the assessment of attorney fees and expenses of litigation under OCGA § 9-15-14 (a). Instead, her only enumerations of error on appeal are that the trial court erred in "communicating with opposing counsel *ex parte*" and in failing to hold a separate hearing on the amount of reasonable and necessary fees and costs. Both assertions are meritless.

(a) While Cagle, or, more properly, her counsel Barrs, does not clearly identify the allegedly improper communications, the record reveals only three possibilities. First, the judge's law clerk telephoned Davis's counsel and instructed her to draft an order. But Barrs acknowledged on the record that he was also telephoned by the clerk. Second, Barrs contended he was never informed of the typographical or clerical error in the proposed order or its correction. But the record demonstrates that he was notified by Davis's counsel by letter and copy of the corrected order. Finally, Barrs complained that he was never informed that the order had been signed. But, again, he acknowledged on the record that the law clerk also telephoned him, although he stated "she may have told me that the order was going to be signed, but she didn't tell me that the order was signed." Moreover, all these communications must be considered in the context of his earlier refusal to participate in reviewing the order for form and his statement that he would "reserve my objections until this matter is appealed."

Black's Law Dictionary defines "ex parte" in this context as "a judicial proceeding, order, injunction, etc. . . . taken or granted at

the instance and for the benefit of one party only, and *without notice to*, or contestation by, any person adversely interested. [Cits.]" (Emphasis supplied.) Black's Law Dictionary (6th ed. 1990), p. 576. Both the record and Barrs's own testimony demonstrate that Cagle, through her counsel, was given notice of each of these communications. Moreover, Canon 3 (B) (7) (a) of the Code of Judicial Conduct explicitly provides that "ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized" if the communication is reasonably believed to provide no unfair advantage and all parties are promptly notified, as was the case here.

(b) Cagle's final contention is that a *separate* hearing should have been held on the *amount* of attorney fees to be awarded on Davis's motion. The trial court held a joint hearing on the pending motions and heard evidence concerning the hours and expenses incurred by Davis's counsel in responding to the contempt motion. But we need not consider whether a separate hearing was required or whether the expenses were reasonable, because Barrs expressly waived these issues in open court. After the trial court received evidence (in the form of a statement in counsel's place and billing documents) concerning Davis's expenses, it asked Barrs for a response. He replied, "I'm not going to question the fees if your honor finds me liable in that situation" and declined to cross-examine. "[I]ssues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken. One may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court." (Citations and punctuation omitted.) *Angell v. Hart*, 232 Ga. App. 222, 223 (2) (501 SE2d 594) (1998).

We find no merit in Cagle's assertions on appeal, and we therefore affirm the judgment of the trial court. The conduct of Cagle and Barrs in pursuing a motion for contempt based upon a mere typographical or clerical error which was quickly corrected is without merit and wholly frivolous. The motion was particularly frivolous in light of Barrs's earlier refusal either to participate in drafting the order or to reveal to opposing counsel the basis for his complaint. We agree with the trial court that the conduct of Cagle and Barrs here was "beyond the pale in my experience" and demonstrates "an utter and complete lack of judgment." We also commend the trial court for its remarkable patience and restraint in dealing with these baseless claims.

Moreover, the appeal of the denial of Cagle's contempt motion was based on wholly meritless allegations, one of which was waived below. Under these circumstances, it is apparent that this appeal is

wholly without merit and was undertaken primarily, if not entirely, for purposes of delay. As a member of the Bar, Cagle is or should be aware of the frivolity of this appeal even though she is represented by counsel. Accordingly, we impose a penalty of $1,000 against Cagle and a penalty of $1,000 against Barrs pursuant to Court of Appeals Rule 15 (b).

*Judgments affirmed. Johnson, C. J., and Barnes, J., concur.*

DECIDED FEBRUARY 17, 1999 —
RECONSIDERATION DENIED FEBRUARY 26, 1999 —

*J. Calhoun Barrs*, for appellants.

*Hawkins & Parnell, Christine L. Mast, Howell Hollis III*, for appellees.