A00A0688. GREER et al. v. DAVIS.
(534 SE2d 853)

ANDREWS, Presiding Judge.

Jonathan Greer II and James McWhorter appeal following a bench trial resulting in a judgment for An'cel Davis, the plaintiff below. Greer and McWhorter bring five enumerations of error, contending the trial court did not have subject matter jurisdiction of this claim because it was an ecclesiastical matter, objecting to the award of attorney fees, and claiming that the judgment did not conform to the issues raised in pleadings or at trial. For the following reasons, we affirm in part and reverse in part.

This case arose when Davis, a newly elected trustee of the Cathedral of Faith Church of God in Christ (the Church), requested information and documents on the financial operations of the Church. Greer, the pastor of the Church, and McWhorter, his administrative assistant, refused to provide the information.

Davis sued both Greer and McWhorter, and the case went to a bench trial. The evidence at trial, taken in the light most favorable to support the verdict, was as follows.

Doris Echols, who took over as administrator after McWhorter resigned,[1] testified that she went to the Church to receive the keys, codes, and financial records from McWhorter and the previous finan-

---

[1] At the time of trial, neither Greer nor McWhorter was still with the Church. Greer had been removed from his position, and McWhorter had resigned.

cial officer, but McWhorter left without turning over any records to her. She said that when she arrived at the Church, Greer was in the process of moving furniture, computers, printers, and files out of the Church offices and onto a truck. Echols called the police, who removed some things from the truck and escorted Greer off the premises. Echols also testified that she tried to change the signature cards on the Church's bank accounts, but Greer's niece and another Church member had already attempted to withdraw the money and had succeeded in closing one bank account containing $5,000. Echols said that the computers with current financial records were removed and recent financial files were also missing. In addition, all of the furniture, books, tapes, and other items from the book store had been removed. Also, there was a balloon note for $400,000 but no record of the money being deposited in any Church bank account. Echols said that when she took over, there was no money in any of the Church accounts, the insurance had lapsed, and they had to wait until they took up the weekly offering to pay the bills.

Davis introduced into evidence the Church bylaws which provided that any member or his attorney may inspect the books and records of the Church for any proper purpose and at any reasonable time upon written demand and under oath stating the purpose. Davis testified that as Church Treasurer, Trustee, and member of the Executive Committee, he was responsible for preparing a budget, monitoring income and expenses, and keeping financial records for the Church. Nevertheless, despite repeated requests, Greer and McWhorter refused to turn over the necessary Church financial records.

McWhorter was the only defense witness at trial. He testified that he had turned over many of the financial records to Davis. But, when cross-examined, he admitted that he did not turn over any tax returns, budgets, audited financial statements, or checking, savings, or investment account records. Also, he did not furnish records of deposits, contributions, or tithes. He said that tithes from the congregation were deposited into the pastor's executive account and his salary as well as other staff members' salaries were paid from that account. He said that he did not know the executive account had been closed until Greer told him of it, after they had left the Church.

The assistant to the presiding bishop for the region who was also the pastor at another Church of God in Christ church, testified that he knew of no Church accounts that would not be subject to review by the trustees; he was not familiar with a "pastor's executive account"; and the finance board or trustee board was in charge of disbursing the income from tithes.

The trial court returned a verdict for Davis, finding that Greer and McWhorter had presented no credible evidence that any reli-

gious doctrine prohibited the Church from providing the requested records to Davis. The order also stated that defendants' refusal to turn over the records was frivolous and vexatious and ordered them to pay attorney fees and costs of $24,657.81. The court found that after Greer had been removed from his position as pastor of the Church and McWhorter had resigned, they took away filing cabinets, computers, computer disks, and furniture from the Church and, as a result, little remained of the Church's financial records. The court ordered Greer and McWhorter to provide a complete financial accounting for the past three years and required them to return any Church property in their possession.

1. On appeal, Greer and McWhorter argue that the civil court had no jurisdiction because this was an ecclesiastical issue. We disagree.

The Georgia Code requires that nonprofit corporations maintain appropriate accounting records in written form or in some form capable of conversion into written form within a reasonable time. OCGA § 14-3-1601. A member of the nonprofit corporation is entitled to inspect and copy these records if the member's demand is made in good faith and for a proper purpose. OCGA § 14-3-1602. Further, upon written demand from a member, a corporation "shall furnish that member its latest prepared annual financial statements, . . . in reasonable detail as appropriate, that include a balance sheet as of the end of the fiscal year and statement of operations for that year." OCGA § 14-3-1620.

> If religious doctrine governing the affairs of a corporation is inconsistent with the provisions of this chapter on the same subject, the religious doctrine shall control to the extent required by the Constitution of the United States or the Constitution of this state or both.

OCGA § 14-3-180.

As Davis points out, the evidence at trial showed that there was no religious doctrine of the Church that was inconsistent with these statutes. Moreover, the Church bylaws specifically give members the right to review financial documents.

Nevertheless, Greer and McWhorter argue this was solely an ecclesiastical matter because it involved a dispute over the roles of a pastor and trustee in the government of the Church and these issues were being investigated by Church authorities. But, whatever issues may have been before the governing bodies of the Church, the only issue before the court was the pastor's obligation to allow a member of the board of trustees to inspect the Church's financial records. The court's order dealt only with this issue and how to enforce its holding.

The court did not decide any matter concerning the relative roles of pastors and trustees in the Church.

Appellants cite to *First Born Church &c. v. Hill*, 267 Ga. 633 (481 SE2d 221) (1997), in support of their argument that this was an ecclesiastical matter. This case is not on point. In *Hill*, the Church constitution conflicted with the Georgia Code provisions on nonprofit corporations. The Code required that meetings be held annually, while the Church constitution provided that the membership would meet only every four years. Id. In that instance, the court held that an order requiring the Church to conform to the Code was an unconstitutional judicial interference in the government of the Church. Id. at 634.

Here, as discussed above, the evidence at trial was that the Church's bylaws were, if anything, more liberal than the Georgia Code in allowing members' inspection of financial records. Therefore, the court's disposition was not inconsistent with the Church's religious freedom to determine its own governmental rules and regulations. See *Hill*, supra at 634.

2. Next, Greer and McWhorter argue that the trial court abused its discretion in awarding attorney fees under OCGA § 9-15-14 (b). This Code section provides that the court may assess reasonable and necessary attorney fees if the court finds that a party or an attorney brought or defended an action that lacked substantial justification or was interposed for delay or harassment. An award under OCGA § 9-15-14 (b) is discretionary, and the standard of review on appeal is abuse of discretion. *Gibson v. Decatur Fed. Sav. &c. Assn.*, 235 Ga. App. 160, 163 (508 SE2d 788) (1998).

The trial court correctly found that appellants' defense of this action was without substantial justification. In light of the evidence showing Davis's clear right to inspect the Church's financial records, Greer's and McWhorter's defense to Davis's claims lacked any justiciable issue of law or fact and therefore must have been asserted for the sole purpose of delay or harassment. Accordingly, the trial court did not abuse its discretion in awarding attorney fees under this Code section. See *Mitcham v. Blalock*, 268 Ga. 644, 648 (491 SE2d 782) (1997); *Cagle v. Davis*, 236 Ga. App. 657, 660 (513 SE2d 16) (1999); *Gibson*, supra at 164.

3. Greer and McWhorter next argue that the attorney fees awarded to Davis were excessive, unreasonable, and unnecessary. The transcript shows that Davis's attorney took the stand at the close of the evidence and described the work that was done in the case and the amount charged. The court asked if defendants' counsel wanted to cross-examine on the issue of fees, and counsel responded that he did not.

There was no error. The trial court heard testimony from plain-

tiff's counsel; defense counsel was given an opportunity to cross-examine on the amount of the fees; and plaintiff's counsel submitted an extremely detailed accounting of each charge.

The trial court's determination as to what fees are reasonable and necessary must be sustained unless the trial court abused its discretion. *Gibbs v. Abiose*, 235 Ga. App. 214, 219 (508 SE2d 690) (1998). Here, the record supports the trial court's award, and therefore, we find no abuse of discretion. *Haggard v. Bd. of Regents &c. of Ga.*, 257 Ga. 524, 527 (360 SE2d 566) (1987).

4. Appellants also object to attorney fees that were added by affidavit after trial. The record shows that Davis's counsel submitted an affidavit for an additional $7,724.50 in fees after the trial. The trial court's order added this amount to the original amount submitted at trial. The order also provided that defendants could submit any objections to the award in writing to the trial court no later than five days from the date of the order.

This was error. "[A] party opposing a claim for attorney fees has a basic right to confront and challenge testimony as to the value and need for legal services." (Punctuation omitted.) *C. A. Gaslowitz & Assoc. v. ZML Promenade*, 230 Ga. App. 405, 406 (496 SE2d 470) (1998). Defense counsel should have been given an opportunity to cross-examine on the amount and reasonableness of the fees and costs requested. *Oden v. Legacy Ford-Mercury*, 222 Ga. App. 666, 669-670 (476 SE2d 43) (1996). Because no hearing was held and defendants were not given an opportunity to cross-examine witnesses on this issue, we reverse and remand the issue of the amount of additional attorney fees to the trial court for an evidentiary hearing.

5. In their last enumeration of error, appellants claim the trial court's order did not conform to the issues pleaded or tried. Specifically, appellants argue there was no reason for the trial court to order an accounting, to order return of the Church property, and to provide for an auditor or the right to review all records. Appellants claim that Davis did not proffer evidence that would have put them on notice of these additional claims.

OCGA § 9-11-15 (b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In addition, a superior court is entitled to grant appropriate relief, even if not expressly asked for, provided the propriety of the relief has been litigated and the opposing party had an opportunity to assert defenses relevant to the relief. *Wender & Roberts, Inc. v. Wender*, 238 Ga. App. 355, 362 (518 SE2d 154) (1999).

Here, the evidence at trial was that many of the Church's important financial records were either nonexistent or missing and the

records that were found or produced had never been validated by an independent auditor. Greer and McWhorter never argued to the trial court that any of the evidence was a surprise to them, nor did they request a continuance to meet the evidence, as provided for in OCGA § 9-11-15 (b).

Moreover, after refusing Davis's request to inspect the records, Greer and McWhorter both left the Church, taking many of the records with them. Therefore, the additional relief granted by the court was necessary to protect and effectuate its judgment. Ga. Const. of 1983, Art. VI, Sec. I, Par. II; *Wender & Roberts*, supra. There was no error.

*Judgment affirmed in part, reversed in part and case remanded. Ruffin and Ellington, JJ., concur.*

DECIDED MAY 19, 2000 —
RECONSIDERATION DENIED JUNE 2, 2000

*Goodman, McGuffey, Aust & Lindsey, Edward H. Lindsey, Jr., Ernest R. Bennett, Jr.*, for appellants.

*Sutherland, Asbill & Brennan, Allegra J. Lawrence, Teresa W. Roseborough*, for appellee.