**FIFTH DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J. and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 27, 2018**

# In the Court of Appeals of Georgia

A18A0589. GATEWAY COMMUNITY SERVICE BOARD v. BONATI.

RICKMAN, Judge.

Gateway Community Service Board filed a declaratory judgment action against Frank Bonati, its former executive director, contending that Bonati's contract violated public policy and that Bonati was not entitled to payment for various other reasons; Bonati counterclaimed for breach of contract, unjust enrichment and attorney fees. Following a bench trial, the trial court ruled in favor of Bonati and awarded him damages and attorney fees. Gateway appeals.[1] For the reasons that follow, we affirm.

---

[1] This is Gateway's second appeal. Following the trial court's decision and the denial of Gateway's motion for new trial, Gateway filed an appeal in the Supreme Court of Georgia on the ground that the case involved construction of the Constitution of the State of Georgia. That court transferred the appeal to this Court because "a review of the orders entered in the proceedings below reveal[ed] that the trial court did not rule on any constitutional issue" and thus there was no basis for

Following a bench trial, appellate courts view the evidence in the light most favorable to the trial court's rulings. See *Smith v. Northside Hospital*, 302 Ga. 517, 520 (807 SE2d 909) (2017). Where, as here, the parties do not request, and the trial court does not make, written findings of fact, any enumeration of error that would require consideration of a finding of fact cannot be reviewed on appeal. See OCGA § 9-11-52 (c) ("When findings or conclusions are not made prior to judgment to the extent necessary for review, failure of the losing party to move therefor after judgment shall constitute a waiver of any ground of appeal which requires consideration thereof."); *Beeks v. Consultech*, 222 Ga. App. 473, 473 (474 SE2d 675) (1996). We review questions of law de novo. See *In re Estate of Knapp*, 326 Ga. App. 486, 489 (756 SE2d 716) (2014).

Construed in favor of the judgment, the evidence shows that Gateway first employed Bonati as its executive director in 2003 and that the parties entered into a series of contracts through the years regarding his employment. On July 16, 2011, the

jurisdiction in the Supreme Court. This Court then held that the trial court had failed to hold a required hearing on Gateway's motion for new trial. *Gateway Community Service Board v. Bonati*, 339 Ga. App. 57 (793 SE2d 111) (2016). Accordingly, this Court reversed and remanded the case for such a hearing and did not address Gateway's other enumerated errors. Id. at 58 (1) and (2). Following the required hearing below, the trial court again denied Gateway's motion for new trial, and Gateway filed the present appeal.

2

parties entered into their final contract—a written, two-year agreement—that obligated Gateway to pay, among other things: (1) compensation of $207,464.16 per year; (2) unused annual leave at the end of the term; (3) certain retirement plan contributions; (4) six months of post-retirement pay in exchange for assisting with a transition to a new executive director; (5) three-months severance; and (6) attorney fees "[i]n any action brought to enforce or interpret the provisions of this Agreement," if Bonati proved to be the prevailing party. Evidence was presented to show that Bonati was also eligible for a performance or signing bonus dating back to his original employment. Bonati fully completed the two-year term of the last contract. Further, Bonati remained willing to provide transition consulting services to Gateway, did not turn down any requests to provide such services, and forewent other job opportunities in order to remain available to Gateway.

Meanwhile, three days after Bonati retired, the commissioner for the Department of Behavioral Health and Developmental Disabilities (the "Department")[2]

---

[2] As used in Title 37, "Department" means the Department of Behavioral Health and Developmental Disabilities and includes its duly authorized agents and designees.

3

appointed David Crews to assume control of Gateway's operations and asked him to make an assessment of the financial condition of the agency and the agency's ability to continue to provide services under the contracts it was holding with the Department.[3] In his report, Crews identified numerous concerns with the finances, operation, and management of Gateway under Bonati's tenure, as well as concerns about Bonati's compensation. Bonati, in general, disputed these concerns.

On October 1, 2013, Gateway brought suit, and Bonati later counterclaimed. Following a bench trial, the trial court ruled in favor of Bonati and awarded him damages of $326,429.88, plus attorney fees of $101,597.25. On appeal, Gateway raises three enumerations of error.[4]

---

OCGA § 37-1-1.

[3] See OCGA § 37-2-10 (c) (under certain specified circumstances, the commissioner of the Department of Behavioral Health and Developmental Disabilities may "appoint a manager or management team to manage and operate the programs and services of the community service board").

[4] In its initial appellate brief, Gateway did not enumerate as error or provide argument or authority for any contention that the compensation awarded by the trial court was not authorized by Bonati's employment agreement or other contracts with Gateway or that the court's math was inaccurate in calculating the award. This Court will not consider any such arguments raised in appellant's reply brief. See *In re Whittle*, 339 Ga. App. 83, 84 n. 2 (793 SE2d 123) (2016); *Perez v. Atlanta Check Cashers*, 302 Ga. App. 864, 867 n.3 (692 SE2d 670) (2010).

1. Gateway contends the trial court erred by declining to hold that Bonati's contract was ultra vires and void as against public policy for two reasons.

(a) Gateway contends that Bonati's contract is not enforceable because Gateway's enabling legislation does not authorize Gateway "to confer a contractual benefit." Specifically, Gateway contends that the enabling legislation did not authorize Gateway to hire Bonati for a two-year term or otherwise "saddle subsequent Gateway boards with onerous obligations."

But it is undisputed that Gateway, a community service board,[5] is a statutorily created public agency, public corporation, and instrumentality of the state. See OCGA § 37-2-6 (a). As such it is governed by a board that, at the time that it entered into the final contract with Bonati, was required to "employ an executive director to serve as its chief executive officer" and authorized to "fix the compensation and terms of compensation of its employees." OCGA § 37-2-6.1 (a) & (b) (7) (effective July 1, 2011 to June 30, 2012). Furthermore, the board was authorized to "make and enter into all contracts necessary and incidental to the performance of its duties and functions" and to "incur debt, liabilities, and obligations for any business purpose."

---

[5] "'Community service board' means a public mental health, developmental disabilities, and addictive diseases board established pursuant to Code Section 37-2-6." OCGA § 37-2-2 (1).

5

OCGA § 37-2-6.1 (b) (2) & (16) (effective July 1, 2011 to June 30, 2012). Finally, the board was authorized to provide benefits to its employees, including "[r]etirement, pension, . . . ; [s]ick leave, annual leave, and holiday leave; and [a]ny other similar benefits." OCGA § 37-2-6.1 (b) (5) (A), (C), (D) (effective July 1, 2011 to June 30, 2012). These broad powers encompass all of the benefits paid to Bonati, and Gateway has not otherwise shown that any of Bonati's benefits fall outside of these provisions of the enabling legislation. Accordingly, Gateway's argument is without merit.[6]

(b) Gateway also argues that the contract violates public policy because it hampers a public officer's administration of his or her duties to the public. More specifically, Gateway argues that Bonati's contract hampered the subsequent administration of Gateway—specifically, the Department—in its ability to control its own hiring and finances. Gateway tendered the testimony of a Gateway board member who testified that by providing Bonati excess benefits under his contract, the Gateway board intended to penalize and deter "the State" from taking over Gateway.

---

[6] Furthermore, the question of whether Gateway was authorized to hire Bonati for a two-year term is moot given that the two-year term had expired by the time Bonati retired and the Department took over control of Gateway. *See Gardner v. City of Brunswick*, 197 Ga. 167, 169 (1) (28 SE2d 135) (1943) (constitutional questions concerning contract were moot given that contract had been fully executed).

6

The prohibition against "the enactment of ordinances or the execution of contracts which are effective beyond the term of the [administration] then in office," *Ledbetter Bros. v. Floyd County*, 237 Ga. 22, 24 (4) (226 SE2d 730) (1976), "is not of statutory origin, and . . . is applicable generally to legislative or governmental bodies." (Citation and punctuation omitted). *Madden v. Bellew*, 260 Ga. 530, 531 (1) (397 SE2d 687) (1990). Thus, our Supreme Court has held that even though there is no similar statute governing counties, the principle applicable to municipalities found in OCGA § 36-30-3 (a), that "[o]ne council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government," "applies to counties as fully as it applies to municipalities." *Madden*, 260 Ga. at 531 (1). Pretermitting whether the above principle is applicable to community service boards, there is no factual basis in the record for applying the principle here.

First, Bonati was entitled to payment for any compensation related to performance already rendered. See *Hewatt v. Bonner*, 142 Ga. App. 442 (236 SE2d 111) (1977) (although employee could not enforce balance of contract after termination by new administration, employee could enforce employment contract for services already rendered); see generally *Ledbetter Bros.*, 237 Ga. at 24 (4) ("[T]he determining factor is whether the contract will be completed within the term of the

7

[present administration.]"). Bonati retired at the end of his contractual term, before Crews was appointed to manage Gateway on behalf of the Department. Accordingly, at a minimum, the principle at issue in this division is not applicable to any remuneration to which Bonati was entitled as of that date, which, construed in favor of the judgment, would include salary, unused annual leave, retirement plan contributions, and the signing/performance bonus. See *Hewatt*, 142 Ga. App. 442.

Second, the remaining portions of Bonati's compensation that Gateway challenges are his six-month post-retirement pay for transition assistance to new leadership plus the severance payable at the end of that six-month period. Construed in favor of the judgment, however, the evidence presented at trial shows that Bonati was ready, willing, and able to perform transitional services for that entire period but that Gateway never requested any such assistance. We must therefore conclude that the trial court determined that Bonati earned his post-retirement compensation, as well. And no evidence was presented at trial to show that Gateway relieved Bonati from his obligation to provide those services if requested during that time. Moreover, the trial court made no findings of fact on these points. Accordingly, we find no basis for concluding that the principle set forth in *Ledbetter Bros. v. Floyd County*—namely, the prohibition of the execution of a contract that is effective

8

beyond the date of the administration then in office—is applicable to the facts of this case, and therefore we find no reversible error.

2. Gateway contends the trial court erred by concluding that the post-retirement portion of Bonati's final employment agreement with Gateway was not an unconstitutional gratuity.[7] The argument is based on Gateway's belief that Bonati's contract "provided lavish severance and consulting payments" for which Gateway received "only a marginal benefit, if any"; that these payments "exceeded the standards of the community service board world"; and that they were awarded in part to deter the Department from intervening in Gateway's operations.

First, although community service boards are public agencies and instrumentalities of the state, none of its liabilities, debts, or obligations can fall on the state:

---

[7] The gratuities clause of the Georgia constitution provides, in pertinent part, that
> (1) the General Assembly shall not have the power to grant any donation or gratuity or to forgive any debt or obligation owing to the public, and
> (2) the General Assembly shall not grant or authorize extra compensation to any public officer, agent, or contractor after the service has been rendered or the contract entered into.

Ga. Const. Art. III, Sec. VI, Para. VI.

9

> [T]he liabilities, debts, and obligations of a community service board shall not constitute liabilities, debts, or obligations of the state or any county or municipal corporation and neither the state nor any county or municipal corporation shall be liable for any liability, debt, or obligation of a community service board.

OCGA § 37-2-6 (a); compare OCGA § 37-2-6.1 (d) (a community service board's property is public property). And we find no case law applying the gratuities clause to a community service board.

But pretermitting the applicability of the clause to the facts in this case, we hold that Bonati's post-retirement benefits were not gratuities. Our Supreme Court has defined "gratuity" in this setting as "something given freely or without recompense; a gift." (Citation and punctuation omitted.) *Garden Club of Georgia v. Shackelford*, 266 Ga. 24 (1) (463 SE2d 470) (1995). "[T]here is no gratuity when the state receives a substantial benefit in exchange for the use of public property." *Garden Club of Georgia v. Shackelford*, 274 Ga. 653, 654 (1) (560 SE2d 522) (2002). Here, Bonati agreed to an additional two-year term under his contract with Gateway in exchange for the benefits he received thereunder, including the post-retirement

provisions.[8] Thus, the state received at least two years of services from Bonati in exchange for those and other benefits provided to Bonati as a part of his agreement. See, e.g., *Cole v. Foster*, 207 Ga. 416, 420 (4) (61 SE2d 814) (1950) (holding that certain disability and retirement pay was not a gratuity, but compensation for services rendered); see generally *Swann v. Board of Trustees of Joint Mun. Employees' Benefit System*, 257 Ga. 450, 453 (1) (360 SE2d 395) (1987) (where an employer and employee agree in advance that the employee will receive "a salary and in addition, at the conclusion of his employment, . . . $500 per month for life[,] it is not a gift but part of the consideration supporting the employment contract"). We therefore find no error by the trial court in concluding that Bonati's post-retirement benefits were not a gratuity under the Georgia constitution.

Although Gateway argues that the board had ulterior motives when it entered into the contract with Bonati and that the board overpaid Bonati, the trial court did not make any related factual findings. Without factual findings on these points, there is no basis for this Court to decide as a matter of law that these factors should affect the enforceability of the contract between the parties. See OCGA 9-11-52 (c) (failure

---

[8] As shown above, the board was authorized to provide those benefits to Bonati. See OCGA § 37-2-6.1 (b) (5) (effective July 1, 2011 to June 30, 2012).

11

of losing party to move for findings of fact following a bench trial constitutes a waiver of any ground of appeal requiring consideration of such a finding).

3. Finally, Gateway argues that the trial court erred by awarding Bonati all of his attorney fees "even though some of his claims were extra-contractual and others were unsuccessful."

Just prior to resting his case, Bonati informed the court that he was going to file an affidavit for attorney fees. Gateway responded that it reserved the right of some rebuttal after seeing the affidavit, to which the trial court agreed. Bonati filed the affidavit on January 8, 2015, and the court did not issue a judgment until January 27, 2015. Gateway did not file any objection regarding segregation of fees during that time, and the trial court never ruled on the issue. "We will not consider legal issues that were neither raised below nor ruled upon by the trial court." *HA & W Fin. Advisors, LLC v. Johnson*, 336 Ga. App. 647, 659 (4) n. 4 (782 SE2d 855) (2016) (declining to rule on issue of whether trial court erred by failing to segregate attorney fee award where issue was not raised nor ruled on in trial court); see also *Cagle v. Davis*, 236 Ga. App. 657, 662 (4) (b) (513 SE2d 16) (1999) (appeal of attorney fee on specified ground was waived where ground was neither raised nor ruled on in the trial court); compare *Terrell v. Pippart*, 314 Ga. App. 483, 485 (2) (724 SE2d 802)

12

(2012) (issue of whether all attorney fees were supported by party's success on only one of several claims was preserved when attorney "moved for a directed verdict on this issue, pointing out that numerous claims were brought against his client" and that another claim did not go to the jury). Accordingly, we find no reversible error.

*Judgment affirmed. Miller, P. J., and McFadden, P. J., concur.*