**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 12, 2020**

# In the Court of Appeals of Georgia

A19A2219. WINNEBAGO INDUSTRIES, INC. v. SIMPSON et al.     CO-080

COOMER, Judge.

This dispute arises out of the purchase of a motor home and the application of OCGA § 10-1-780 et seq., Georgia's Lemon Law, in connection with said purchase. Winnebago Industries, Inc., ("Winnebago") appeals the trial court's orders denying its motion for summary judgment and granting final judgment in favor of James and Stuart-Lynn Simpson (collectively, the "Simpsons") following a bench trial. Winnebago contends the trial court erred in denying its motion for summary judgment and awarding relief to the Simpsons because it was not the manufacturer of the malfunctioning parts of the motor home and thus it could not be liable under OCGA § 10-1-782 (14)-(15). Winnebago also argues the trial court erred in awarding the Simpsons a replacement motor home because the sealant failures were the result of

natural deterioration and the Simpsons' failure to properly maintain the motor home. Winnebago challenges the trial court's factual finding that the sealant failures were covered by warranty, that the repair attempts were unsuccessful, that the sealant failures constituted defects, and that the motor home was out of service for more than 30 days on account of non-conformities. Lastly, Winnebago argues the trial court erred in awarding the Simpsons attorney fees because the conditions under OCGA § 10-1-786 (e) were not satisfied and the Simpsons failed to prove the reasonableness of their fees. For the reasons that follow, we affirm.

> We apply a de novo standard of review to any questions of law decided by the trial court; factual findings made after a bench trial shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.

*ALA Constr. Svcs., LLC v. Controlled Access, Inc.*, 351 Ga. App. 841, 841-842 (833 SE2d 570) (2019) (citation omitted). So viewed, the record shows that on or about July 8, 2014, the Simpsons purchased a 2014 Itasca Meridian IKP. 36M motor home (the "motor home") from Camping World, an authorized dealer for Winnebago. The motor home was manufactured by Winnebago and Freightliner Custom Chassis, Inc., ("Freightliner"). Freightliner supplied the chassis, but Winnebago assembled the

motor home by adding the dashboard, driver and passenger seats, windshield, windows, and by applying the sealant during the end-stage of production.

After completing a test drive of the motor home on July 8, 2014, when James attempted to step out of the motor home from the driver's seat, water poured in from overhead into Stuart-Lynn's lap and onto the dash. The Simpsons reported the leak to the service manager and were told it would be taken care of. The Simpsons spoke with the salesman who told them that there had been a big rainstorm shortly before they arrived and that it was possible water got into the vehicle when the awning was retracted. The Simpsons went through with the purchase of the motor home believing the leak issue would be taken care of, but they did not take possession of the motor home until July 16, 2014, because it was being repaired and prepped for delivery.

After taking delivery of the motor home, the Simpsons took it on a trip where they experienced water leaking into the motor home on the driver's side around the window. After several occasions of water leaking into the motor home, the Simpsons submitted the motor home for repairs to Camping World in December 2014. After the leak repairs in December 2014, the motor home continued to experience leaks on the driver's side in the window over the dash. In December 2015, the Simpsons took the motor home back to Camping World with complaints of water leaking. After the

3

motor home underwent repairs, water continued to leak into the motor home in the same area. The Simpsons took the motor home in for repairs in February 2016 and complained of water getting into the coach from above the driver's side window. The Simpsons provided photographs and a video of the leak in emails to the service repair technicians. The motor home continued to experience water leaks in the same area within two months of the February 2016 repairs. The Simpsons did not incur any out-of-pocket costs in relation to the sealants on the motor home.

In April 2016, the Simpsons submitted a Final Repair Opportunity Notice to Winnebago via certified mail. In response to the notice, Winnebago asked if the Simpsons would deliver the motor home to Camping World where it would be driven to Iowa to repair the leak. While in the Iowa factory, technicians working on the motor home expressed difficulty in getting the sealant to adhere to the motor home's fiberglass. Some time after the final repairs were completed, the Simpsons continued to experience leaking in the same area of the motor home as before. The Simpsons submitted a request to Winnebago for the motor home to be repurchased or replaced on March 14, 2017. Winnebago did not repurchase or replace the motor home.

The Simpsons filed an application under the Georgia Lemon Law state-operated arbitration program in May 2017. Following a hearing, a panel of three

4

arbiters decided in favor of the Simpsons. Winnebago appealed the arbiters' decision to the superior court pursuant to OCGA § 10-1-787 (a). In January 2018, Winnebago filed a motion for summary judgment, which the trial court denied in two identical orders filed on June 25, 2018 and August 1, 2018. On December 12, 2018, the parties appeared for a bench trial in superior court regarding Winnebago's appeal of the arbiters' decision. The trial court entered a final judgment in favor of the Simpsons on January 15, 2019. The Simpsons remain in possession of the motor home but have not used it since May 2017. This appeal followed.

1. Winnebago argues the trial court erred in denying its motion for summary judgment and later awarding relief in favor of the Simpsons because the parts of the motor home where failures occurred were not parts of a motor home that are covered under Georgia's Lemon Laws. More specifically, Winnebago contends that in its orders denying Winnebago's motion for summary judgment and entering a final judgment, the trial court ignored the statutory language of Georgia's Lemon Laws and instead created new standards for liability of manufacturers that are contrary to said laws. We disagree.

> In reviewing the grant or denial of a motion for summary judgment, we
> apply a de novo standard of review, and we view the evidence, and all

reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Edwards v. Moore*, 351 Ga. App. 147, 147 (830 SE2d 494) (2019) (citation omitted). Additionally,

[w]hen we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. . . . [I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

*Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) (citations and punctuation omitted). With these guiding principles in mind, under Georgia's Lemon Law, the term "new motor vehicle" means

any self-propelled vehicle primarily designed for the transportation of persons or property over the public highways that was leased, purchased, or registered in this state by the consumer or lessor to whom the original motor vehicle title was issued without previously having been issued to any person other than a new motor vehicle dealer. . . . If a new motor vehicle is a motor home, this article shall apply to the *self-propelled vehicle and chassis*, but does not include those portions

6

of the vehicle designated, used, or maintained primarily as living quarters, office, or commercial space.

OCGA § 10-1-782 (15) (emphasis supplied). The term "manufacturer" means "any person engaged in the business of constructing or *assembling new motor vehicles*[.]" OCGA § 10-1-782 (14) (emphasis supplied).

Winnebago contends the trial court's application of OCGA § 10-1-782 (15) to the location of the water leaks complained about by the Simpsons — that is, the driver's side window, windshield, and above the driver's seat — is erroneous because the leaks did not originate in the "chassis or self-propelled vehicle." While the statute does not define the term "self-propelled vehicle" specifically, Georgia's Attorney General's promulgated administrative rules provide additional guidance and describe the term "motor home" to mean

> the self-propelled vehicle and chassis, including but not limited to the vehicle exterior, driver and passenger compartments, and parts and components identical or similar in function to those found on any other new motor vehicle as defined at O.C.G.A. § 10-1-782(15), but shall not include those portions of the vehicle designated, used, or maintained primarily as living quarters, office, or commercial space.

Ga. Comp. R. & Regs., r. 60-2-1-.02 (11). See also *Lane v. Williams Plant Svcs.*, 330 Ga. App. 416, 416-417 (766 SE2d 482) (2014) ("Where statutory provisions are ambiguous, courts should give great weight to the interpretation adopted by the administrative agency charged with enforcing the statute. Courts should defer to an agency interpretation so long as it comports with legislative intent and is reasonable." (citations and punctuation omitted)).

Here, the trial court essentially agreed with the arbiters' conclusion that the areas where the Simpsons experienced the water leak problems were in areas of the motor home not excluded by statute, but included under the statute's definition of new motor vehicle, and thus covered by the statute. As the assembler of the motor home, Winnebago meets the statute's definition of a manufacturer who may be subject to liability under Georgia's Lemon Law. Accordingly, we find no error in the trial court's application of the statute to the facts of this case, its denial of Winnebago's motion for summary judgment, or its grant of relief to the Simpsons.

2. Winnebago next argues the trial court erred by awarding the Simpsons a replacement vehicle because the sealant failures resulted from the natural deterioration of the sealants from exposure to the elements and the Simpsons' failure to properly maintain the motor home. We find no error.

It is well established that the "factual findings made at a bench trial should only be set aside where they are clearly erroneous, and the trial court's findings of fact should be upheld if there is any evidence to sustain them." *Moses v. Pennebaker*, 312 Ga. App. 623, 628 (2) (a) (719 SE2d 521) (2011) (citation omitted). In its final order, the trial court made several findings of fact. The trial court found that Winnebago manufactured the motor home purchased by the Simpsons and on the day the Simpsons took a test drive of the motor home, water leaked into the driving portion of the motor home. The service manager of the dealership assured the Simpsons that the leak would be handled, and the Simpsons purchased the motor home based on said assurances. During their possession of the motor home, all of the water leaks occurred over and into areas where the driver and passenger seats are located and the Simpsons took the motor home to Winnebago's authorized agents at Camping World for repairs to those areas. The attempted water leak repairs were covered by warranty. Based on the evidence presented, the trial court ultimately concluded that the water leaks were not the result of the Simpsons' neglect or failure to properly maintain the motor home.

Winnebago asserts that Georgia's Lemon Law only provides relief for "defectively manufactured new motor vehicles," and that the evidence presented at

trial did not support a finding that there were manufacturing defects to the motor home. However, the record shows that Winnebago assembled the portions of the motor home where the leaks occurred. The record further shows that while the motor home was being repaired at Winnebago's factory in Iowa, technicians noticed that the sealant they installed was not adhering to the fiberglass. It took Winnebago 9 days to address the leak issues while it was at its factory in Iowa.

OCGA § 10-1-782 (17) defines nonconformity as "a defect, a serious safety defect, or a condition, any of which substantially impairs the use, value, or safety of a new motor vehicle to the consumer or renders the new motor vehicle nonconforming to a warranty. A nonconformity does not include a defect, a serious safety defect, or a condition that is the result of abuse, neglect, or unauthorized modification or alteration of the new motor vehicle." OCGA § 10-1-782 (17). OCGA § 10-1-784 (a) (1) provides in part that

> If a consumer reports a nonconformity during the lemon law rights period, the manufacturer, its authorized agent, or the new motor vehicle dealer shall be allowed a reasonable number of attempts to repair and correct the nonconformity. A reasonable number of attempts shall be deemed to have been undertaken by the manufacturer, its authorized agent, or the new motor vehicle dealer if, during the lemon law rights period: . . . [t]he same nonconformity has been subject to repair three

10

times and the nonconformity has not been corrected; or [t]he vehicle is out of service by reason of repair of one or more nonconformities for a cumulative total of 30 days.

As discussed in Division 1 of this opinion, Georgia's Lemon Law applies to the area where the leaks occurred. Winnebago contends the sealant failures developed overtime due to poor maintenance and environmental exposure, and were not, as the trial court found, the result of defects in the seals. However, the record demonstrates the motor home experienced leaks in the sealant during the Simpsons' test drive, the Simpsons reported the motor home's nonconformity during the applicable lemon law rights period to Winnebago via Camping World,[1] Winnebago and Camping World made reasonable attempts to repair the motor home's nonconformity, and the motor home was out for service due to repairs undertaken by Winnebago for more than 30 days. Thus, the trial court's finding that the water leaks met the statute's definition

[1] OCGA § 10-1-782 (10) defines the lemon law rights period to mean "the period ending two years after the date of the original delivery of a new motor vehicle to a consumer or the first 24,000 miles of operation after delivery of a new motor vehicle to the original consumer, whichever occurs first." The record shows the Simpsons first reported the nonconformity to Winnebago after taking possession of the motor home in December 2014.

of a nonconformity was not clearly erroneous and Winnebago failed to demonstrate any basis for reversal.

3. Lastly, Winnebago challenges the trial court's award for fees under OCGA § 10-1-786 (e) and argues the Simpsons are not entitled to Lemon Law relief. Winnebago contends the Simpsons' attorney fees affidavit was insufficient to support an award of fees because it failed to show the reasonableness of the fees. We find no error.

OCGA § 10-1-786 (e) provides as follows:

If the arbitrator or arbitrators determine: (1) That a reasonable number of attempts has been undertaken to repair and correct the nonconformity and that the manufacturer was given the opportunity to make a final attempt to repair and correct the nonconformity and was unable to correct it; or (2) That a new motor vehicle was out of service by reason of repair of one or more nonconformities for a cumulative total of 30 days within the lemon law rights period, the consumer shall be awarded replacement or repurchase of the new motor vehicle as provided under Code Section 10-1-784. The arbitrator or arbitrators also may award attorney's fees and technical or expert witness fees to a consumer who prevails.

OCGA § 10-1-787 (c) also provides that

If the manufacturer appeals and the consumer prevails, recovery, in addition to the arbitrator's award, shall include all charges incurred by the consumer during the pendency of, or as a result of, the appeal, including, but not limited to, continuing collateral and incidental costs, technical or expert witness fees, attorney's fees, and court costs.

The record shows that the arbitration panel determined that a reasonable number of attempts to repair the motor home, including a final attempt were made by Winnebago, and that the motor home was out of service for a total of 30 days while the above mentioned repair attempts were made. Based on these findings, the Simpsons were awarded attorney fees following their state-operated arbitration pursuant to OCGA § 10-1-786 (e). In its final judgment, the trial court awarded the Simpsons $6,700 plus court costs pursuant to OCGA § 10-1-787 (c) after reviewing an affidavit submitted by the Simpsons' attorney. A copy of the attorney's affidavit was not included in the record on appeal; however, the trial court made the following findings:

The [c]ourt finds the number of hours set forth by Plaintiffs' attorney to represent them in this matter is reasonable. The [c]ourt also finds the rate of $250 per hour charged, considering the legal issues presented, complexity of the matter, experience of the attorney and other circumstances, is reasonable and necessary in her representation.

Because the record does not contain a copy of the affidavit, and Winnebago did not object to the submission of the affidavit after trial,[2] this Court does not have sufficient basis to reverse the trial court's factual findings that the affidavit was sufficient. See *Jones v. Unified Govt. of Athens-Clarke County*, 312 Ga. App. 214, 222 n. 30 (2) (a) (718 SE2d 74) (2011) ("[T]he trial court's determination as to what fees are reasonable and necessary must be sustained unless the trial court abused its discretion[.]" (citation omitted)).

*Judgment affirmed. Doyle, P. J., and Markle, J., concur.*

---

[2] Compare *Greer v. Davis*, 244 Ga. App. 317, 321 (4) (534 SE2d 853) (2000) (error where defendant objected to attorney fees that were added by affidavit after trial and defendant not given an opportunity to cross-examine on the amount and reasonableness of the fees and costs requested).